PEOPLE v MARSHALL

Docket No. 297115. Submitted September 6, 2012, at Detroit. Decided
    October 4, 2012. Approved for publication November 29, 2012, at
    9:05 a.m. Vacated in part, 493 Mich 1020.

    Dustin A. Marshall was convicted by a jury in the Jackson Circuit
    Court, Chad C. Schmucker, J., of assault with intent to commit
    murder, possession of a firearm by a felon, and possession of a
    firearm during the commission of a felony and was sentence as a
    fourth-offense habitual offender. Defendant appealed. In an un-
    published order entered October 22, 2010 (Docket No. 297115),the
    Court of Appeals, while retaining jurisdiction, remanded the
    matter to the trial court for a hearing pursuant to *People v
    Ginther*, 390 Mich 436 (1973), regarding defendant's claim that he
    received ineffective assistance of counsel. Following that hearing,
    the trial court, Thomas D. Wilson, J., denied defendant's motion
    for a new trial.

        The Court of Appeals *held*:

        1. The trial court did not err by determining that defense counsel
    was not ineffective as a result of his choice of defense strategies.
    Following the *Ginther* hearing, the trial court found that defense
    counsel's account of his pretrial discussions with defendant was
    credible, and that determination was entitled to deference.

        2. Defendant did not show that defense counsel's failure to
    introduce certain photographs allegedly depicting a bush that
    might have obscured the witnesses' view of the crime scene fell
    below an objective standard of reasonableness or that there is a
    reasonable probability that the result of the trial would have been
    different if the photographs had been introduced. Defendant failed
    to establish this claim of ineffective assistance of counsel.

        3. Defendant failed to demonstrate that he was prejudiced by
    his counsel's failure to file a motion to suppress a photograph of
    defendant wearing clothing matching the description of the shoot-
    er's clothing. The camera that contained the photograph was
    discovered during the execution of a search warrant at the place
    where defendant was staying that authorized the seizure of any
    and all evidence relating to the shooting of the victim. The camera

contained evidence linking defendant to the offense and was within the scope of the warrant.

4. Defense counsel's failure to file a motion in limine to exclude evidence of defendant's prior convictions for impeachment purposes was not ineffective assistance of counsel because defendant did not testify or plan to testify and therefore the motion was unnecessary.

5. The victim's bloody clothing was relevant evidence because it showed bullet holes indicating the number of shots that were allegedly fired, the location of the wounds, and the amount of blood lost by the victim. The evidence was probative of the circumstances surrounding the victim's injuries and the shooter's intent during the assault. The presence of the blood on the clothing was not so shocking or gruesome that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under MRE 403. Because the evidence was admissible, defense counsel was not ineffective as a result of his failure to object to its admission.

6. Evidence that shell casings recovered from the crime scene matched the caliber and brand of ammunition found during the execution of the search warrant at the place where defendant was staying was relevant to connect defendant to the shooting and the gun used in the shooting. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Defense counsel was not ineffective as a result of failing to object to the admissible evidence regarding the bullets. Further, because the clothing and bullets were properly admitted, the prosecutor was free to comment with regard to the evidence and defense counsel was not ineffective because he failed to object to the prosecutor's statements.

7. Defense counsel's failure to introduce into evidence a laboratory report that was not exculpatory and had no tendency to eliminate defendant as the shooter or identify someone else as the shooter was not objectively unreasonable. There was no reasonable probability that the result of the proceeding would have been different had the report been presented. In sum, defendant was not denied effective assistance of counsel. The trial court did not abuse its discretion by denying defendant's motion for a new trial based on ineffective assistance of counsel.

8. Because the trial court was familiar with the facts of the case and the legal standards for evaluating an attorney's performance relative to a claim of ineffective assistance of counsel, its decision to deny defendant's request to present an attorney at the *Ginter* hearing as an expert witness regarding whether defense

counsel's performance adhered to community standards and norms was within the range of reasonable and principled outcomes and not an abuse of discretion.

9. It was not improper for the prosecutor to comment on matters affecting the credibility of the witnesses and possible influences on their testimony when arguing that their identification of defendant as the shooter should be believed. A prosecutor may argue from the facts that witnesses are worthy or not worthy of belief. Defendant failed to show plain error in this regard.

10. Defendant failed to show that plain error occurred affecting his substantial rights when the prosecutor introduced evidence that children lived in the area where the shooting occurred to support an argument that defendant's conduct of firing shots in a residential area showed that he acted with the intent to kill. A jury may infer the intent to kill from all the facts and circumstances, including the use of a deadly weapon. A prosecutor is not required to use only the least prejudicial evidence to establish facts at issue.

11. A prosecuting attorney seeking to enhance the sentence of a criminal defendant because of the defendant's status as an habitual offender must, pursuant to MCL 769.13(1), file a written notice of the intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense; the date of the bindover from the district court to the circuit court is not one of the specified dates for measuring the timeliness of the notice. Because it is undisputed that defendant was never arraigned on the underlying offense in the circuit court, the period for filing the habitual-offender sentence enhancement notice was properly measured from the date the information charging the underlying offense was filed. In this case, the underlying information, which included an habitual-offender notice, was timely filed.

12. Defendant's prior convictions were established, for habitual-offender sentence-enhancement purposes, by the unchallenged information in the presentence investigation report and defendant's acknowledgment that the prior record variables of the sentencing guidelines, which reflected defendant's prior convictions, were properly scored.

Affirmed.

SENTENCES — HABITUAL OFFENDERS — NOTICE OF INTENT TO ENHANCE SENTENCE — TIMELINESS OF NOTICE.

A prosecuting attorney seeking to enhance the sentence of a criminal defendant because of the defendant's status as an habitual of-

fender must file a written notice of the intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense; the date of the defendant's bindover from the district court to the circuit court on the underlying offense is not an appropriate date from which to measure the timeliness of the notice (MCL 769.13[1]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Henry C. Zavislak*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

*Frank D. Eaman, PLLC* (by *Frank D. Eaman*), for defendant.

Before: SERVITTO, P.J., and FITZGERALD and TALBOT, JJ.

PER CURIAM. Defendant appeals as of right his convictions following a jury trial of assault with intent to commit murder, MCL 750.83, possession of a firearm by a felon, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 35 to 60 years for the assault and the felon-in-possession convictions and a consecutive two-year term of imprisonment for the felony-firearm conviction. Defendant appealed and the Court of Appeals, while retaining jurisdiction, remanded the matter to the trial court for a *Ginther*[1] hearing. Unpublished order of the Court of Appeals, entered October 22, 2010 (Docket No. 297115). We affirm.

Defendant's convictions arose from the nonfatal shooting of Jamaal Hunt during the early morning hours of July 5, 2009, in Jackson, Michigan.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he was denied the effective assistance of counsel. Defendant raised this issue in a posttrial motion for a new trial, which the trial court denied. After conducting the *Ginther* hearing, the trial court denied defendant's motion for a new trial. "A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008).

The right to counsel guaranteed by the United States and Michigan Constitutions is the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient in that it fell below an objective standard of professional reasonableness and that it is reasonably probable that, but for counsel's ineffective assistance, the result of the proceeding would have been different. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Effective assistance of counsel is presumed, and a defendant must overcome the presumption that counsel's performance constituted sound trial strategy. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314

(2009); *Jordan*, 275 Mich App at 667-668. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Defendant argues that defense counsel was ineffective as a result of pursuing "a strategy of defense that was chosen by him, not by the defendant, a strategy that was doomed because of his lack of preparation, investigation, and research and because it was a lie." Defendant further argues that counsel was ineffective because he did not investigate a claim of self-defense. "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id.* (quotation marks and citation omitted). Failure to make a reasonable investigation can constitute ineffective assistance of counsel. *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005).

At the *Ginther* hearing, defendant and defense counsel presented conflicting accounts of their pretrial discussions of the case and possible defense strategies. According to defense counsel, defendant told him that he shot the victim in self-defense during a struggle with the victim over the gun. Counsel, who was retained, testified that he expressed a desire to hire a private investigator and a medical expert to explore the self-defense theory, but defendant did not want to spend any more money and he refused to provide the names of any witnesses or allow counsel to use that defense. Counsel explained that he therefore elected to pursue a strategy of attacking the sufficiency of the evidence and estab-

lishing reasonable doubt. According to counsel, even after he informed defendant that a "reasonable doubt" defense only had a 20 to 30 percent chance of success, defendant was still convinced that he could "beat" the charge because he had been acquitted of a previous shooting using that strategy. Conversely, defendant testified that he told defense counsel that the shooting occurred during a struggle between himself and the victim, but denied telling defense counsel what defense theory to pursue or refusing to allow counsel to pursue a defense of self-defense. According to defendant, defense counsel told him that, in light of the preliminary examination testimony, no one could identify defendant as having been at the scene of the crime, so he "should go with I wasn't there."

An evaluation of defense counsel's performance depends, in part, on which version of these competing accounts was deemed credible. The trial court's determinations indicate that it credited defense counsel's testimony and held that counsel's defense strategy was objectively reasonable. " '[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.' " *Dendel*, 481 Mich at 130, quoting MCR 2.613(C). The trial court had the opportunity to judge the credibility of defense counsel and defendant and found that defense counsel's account of the events was credible. The court concluded that defense counsel was not ineffective "for failing to investigate a defense that Defendant refused to let him run."

Although defendant's witnesses at the *Ginther* hearing testified in support of a self-defense theory, defense counsel's testimony indicates that he wanted to pursue a self-defense claim but defendant did not want to do so, would not provide the names of witnesses, and would

not permit counsel to hire a private investigator to explore that defense. Crediting defense counsel's testimony that defendant refused to cooperate in presenting a self-defense claim, counsel cannot be faulted for not pursuing that defense. Without defendant's cooperation, it would have been implausible to present that defense at trial. Further, considering the conflicting and widely varied testimony elicited at the preliminary examination and at trial, it was not unreasonable for counsel to pursue a "reasonable doubt" strategy. Indeed, although eyewitness Lasonia Wilks identified defendant as the person involved in the altercation with the victim, the victim himself maintained that defendant was not present at the scene. Accordingly, giving deference to the trial court's finding that defense counsel was credible, we find no error in the trial court's determination that defense counsel was not ineffective as a result of his choice of defense strategies.

Defendant additionally argues that counsel was ineffective because he failed to introduce photographs that could have impeached the credibility of eyewitness testimony. At the *Ginther* hearing, defendant presented three photos taken by his original defense counsel, which allegedly depicted a bush that might have obscured a view of the scene. Although initial defense counsel attached some significance to the photographs, when he attempted to use them to undercut the credibility of an eyewitness at the preliminary examination, his strategy was unsuccessful. The trial court observed the photos and held that they did not clearly demonstrate the existence of a bush and that if any bush were shown to have been present it would not have discredited the testimony of the eyewitnesses to the point of producing a different outcome at trial. The trial court's findings are not clearly erroneous. Thus, defendant has not demonstrated that counsel's failure to introduce the

photographs fell below an objective standard of reasonableness or that there is a reasonable probability that the result of the trial would have been different if the photos had been introduced.

Defendant next argues that defense counsel was ineffective because he failed to move to suppress a photograph of defendant wearing a shirt that matched the description of the shirt worn by the shooter. Defendant argues that the photograph was unlawfully seized because the camera from which it was obtained was not an object within the scope of the search warrant that the police executed at the place where defendant was found. First, we disagree with defendant's contention that the camera was beyond the scope of the search warrant. The warrant broadly authorized the seizure of "any and all evidence related to the shooting of Jamal [sic] Hunt . . . ." A camera containing a photograph of defendant wearing clothing that matched the description of the shooter's clothing was evidence linking defendant to the offense and, therefore, within the scope of the warrant. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Further, defense counsel testified that he did not object to the photo because the shirt that defendant was wearing looked like a common shirt that could be found in many closets. The trial court agreed that even if a motion to suppress had been successful, there was no reasonable probability that the outcome of the trial would have been different if the photograph had been excluded. Thus, defendant has not demonstrated that he was prejudiced by counsel's failure to file a motion to suppress.

Defendant also argues that counsel was ineffective because he failed to file a motion in limine to exclude evidence of defendant's prior convictions for impeach-

ment under MRE 609. However, such a motion would have been necessary only if defendant had planned to testify. According to defense counsel, defendant stated that he did not want to testify because he did not feel comfortable speaking in court and he did not feel that he came across well. Because defendant did not testify and defense counsel's testimony, which the trial court credited, indicates that defendant never planned on testifying, counsel was not ineffective because he failed to file a motion in limine. Counsel was not required to make an unnecessary motion. See *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

Defendant next argues that defense counsel was ineffective because he failed to object to the admission of the victim's bloody clothing or evidence that bullets discovered during a search of the place where defendant was found appeared to match the shell casings recovered from the crime scene. Defendant also argues that counsel was ineffective because he failed to object to the prosecutor's references to this evidence during closing argument. Defendant argues that this evidence was irrelevant and unduly prejudicial.[2] We disagree. .

"Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

---

[2] Although defendant challenges the admissibility of this evidence as part of a separate issue on appeal, defense counsel expressly informed the trial court that he had no objection to the admission of the victim's clothing or the box of bullets found where defendant was staying. By affirmatively approving the admission of this evidence, defense counsel waived any error. *People v Carter*, 462 Mich 206, 214-219; 612 NW2d 144 (2000); *People v Ortiz*, 249 Mich App 297, 311; 642 NW2d 417 (2002). A waiver extinguishes any error, leaving no error to review. *Carter*, 462 Mich at 216; *Ortiz*, 249 Mich App at 311. Accordingly, our review is confined to determining whether defense counsel was ineffective because he approved the admission of this evidence.

evidence." MRE 401. All relevant evidence is admissible, except as otherwise provided by law or court rule. MRE 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403.

The victim's clothing was relevant because it showed bullet holes supporting the alleged number of shots that were fired, the location of the victim's wounds, and the degree to which the victim bled. This evidence was probative of the circumstances surrounding the victim's injuries and the shooter's intent during the assault. Moreover, while the presence of blood on the clothing could be considered prejudicial, it was not so shocking or gruesome that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. MRE 403. Because the clothing was admissible, defense counsel was not ineffective as a result of failing to object to its admission. Defense counsel is not required to make a futile objection. *Ericksen*, 288 Mich App at 205.

Likewise, that the shell casings recovered from the crime scene matched the caliber and brand of ammunition found at the location where defendant was staying was relevant to connect defendant to the shooting and show that he was the source of the gun used in the shooting. Moreover, there was no attempt to use the bullets for any purpose other than that for which they were relevant (i.e., to connect defendant to the shooting), so the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403. Accordingly, the evidence was admissible and defense counsel was not ineffective because he failed to object to its admission. *Ericksen*, 288 Mich App at 205.

Further, because the victim's clothing and the bullets were properly admitted into evidence, the prosecutor was free to comment on that evidence during closing argument. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). Therefore, defense counsel was not ineffective because he failed to object to the prosecutor's statements. *Ericksen*, 288 Mich App at 205.

Defendant next argues that defense counsel was ineffective as a result of failing to request the introduction of a laboratory report that was produced at the end of the trial. The report indicated that no fingerprints could be found on the shell casings that were recovered from the crime scene. Contrary to what defendant asserts, this evidence was not exculpatory. It had no tendency either to eliminate defendant as the shooter or to identify someone else as the shooter. We agree with the trial court's statement that the laboratory report "added nothing to the case" because it was "inconclusive as to identity." Because the evidence had no exculpatory value, defendant has not demonstrated that counsel's failure to introduce the report was objectively unreasonable or that there is a reasonable probability that the result of the proceeding would have been different had the report been presented.

In sum, defendant has not demonstrated that he was denied the effective assistance of counsel. We reject most of defendant's claims as a result of his failure to show that counsel's performance fell below an objective standard of reasonableness. To the extent that counsel made some errors, defendant has not demonstrated a reasonable probability that those errors, whether considered singularly or cumulatively, affected the outcome of trial. *Jordan*, 275 Mich App at 667; *People v McLaughlin*, 258 Mich App 635, 649; 672 NW2d 860 (2003). Accordingly, the trial court did not abuse its

discretion by denying defendant's motion for a new trial with respect to this issue. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003).

Defendant also vaguely challenges the trial court's decision denying his request to present an attorney as an expert witness at the *Ginther* hearing to testify regarding whether defense counsel's performance adhered to community standards and norms. We review for an abuse of discretion the trial court's decision to exclude this testimony. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An abuse of discretion occurs when a trial court selects an outcome that does not fall within the range of reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). Expert testimony is admissible under MRE 702 if the trial court determines that "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." In this case, the testimony was offered at a hearing at which the trial court acted as the trier of fact. The court found that the proposed testimony would not be helpful because it was "well aware of the community standards on this issue." The trial court appropriately evaluated the admissibility of the proposed testimony under MRE 702. Because the court was familiar with the facts of the case and the legal standards for evaluating an attorney's performance relative to a claim of ineffective assistance of counsel, its decision to exclude defendant's proposed expert testimony was within the range of reasonable and principled outcomes and, therefore, was not an abuse of discretion.

## II. THE PROSECUTOR'S CONDUCT

Defendant next argues that the prosecutor engaged in misconduct when he argued that the number of

people present in the court was somehow intimidating the witnesses and when he elicited testimony that children were living on the block where the shooting occurred and then used that fact to argue intent. Because defendant did not object to either instance of alleged misconduct, these claims of error are unpreserved. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *Id.*

Prosecutors are accorded great latitude regarding their arguments and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case. *Seals*, 285 Mich App at 22. A prosecutor may argue from the facts that witnesses are worthy or not worthy of belief. *People v Dobek*, 274 Mich App 58, 67; 732 NW2d 546 (2007); *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). This is especially relevant when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes. *Id.* Considered in context, the prosecutor's arguments addressed matters relating to the weight and credibility of the witnesses' testimony. The prosecutor commented on the facts that the eyewitnesses' testimony was equivocal and their accounts and recollection of the events varied between the times of their initial interviews with the police, the preliminary examination, and the trial. The prosecutor offered reasons for the equivocation, including that the witnesses were required to testify in the presence of a large number of people, which was a matter of record. It was not improper for the prosecutor to comment on matters affecting the credibility of the witnesses and possible influences on their testimony to argue that their identification of defendant as the shooter should be believed, as opposed

to other times when they did not identify defendant as the shooter. Defendant has not demonstrated a plain error with respect to this unpreserved claim of misconduct.

We also reject defendant's argument that the prosecutor improperly elicited evidence that children lived in the neighborhood and then improperly commented on that evidence when arguing that continuing to shoot at the victim "in a residential area where the homes are near each other and where kids reside, only underscores the fact that . . . defendant . . . intended to kill [the victim]." "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). "A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001). A jury may infer the intent to kill on the basis of all the facts and circumstances, including the use of a dangerous weapon. See *People v Dumas*, 454 Mich 390, 403; 563 NW2d 31 (1997). "There is no rule requiring the prosecution to use only the least prejudicial evidence per se to establish facts at issue." *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66.

The prosecutor introduced evidence that children lived in the area where the shooting occurred and that defendant fired shots in the vicinity of people who were gathered. The prosecutor was free to comment on this evidence, and reasonable inferences arising therefrom, to support an argument that defendant's conduct of

firing shots in a residential area showed that he acted with an intent to kill. The strength of that inference was a matter for the jury to decide. Although the fact that children lived close to the scene of the shooting may have aroused sympathy, the jury was instructed that it must not let sympathy influence its decision. Because the prosecutor's argument was not improper and the trial court's instruction was sufficient to protect defendant's substantial rights, defendant has not demonstrated a plain error affecting his substantial rights.

### III. ISSUES INVOLVING THE JURY

Defendant raises two issues relating to the trial court's handling of matters involving the jury. Defendant first complains that no record was made of various juror notes or communications between the court and the jury and that prejudice must be presumed in the absence of a record.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). One purpose of appellate-preservation requirements is to "create a record of the error and its prejudice." *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997). Defendant did not raise this issue below, either at trial or in an appropriate posttrial motion. Although the juror notes are a matter of record (they are included in the lower court file), there is no indication in the record that the notes were ever conveyed to the trial court or that any off-the-record communications between the court and the jury ever occurred. Because defendant did not raise this issue below, no record establishing that these alleged events actually occurred was ever created.

Thus, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011).

The lower court file contains four handwritten notes stapled to the verdict form. The notes appear to be juror notes, questions, and requests. The notes state:

> [Note 1] Body mike
>          dash camera
>          hospital dashcam
>          911 call
>
> [Note 2] Could we back it up to the door knock?
>
> [Note 3] Could we see the video of Dr. [Rami] Khoury?
>
> [Note 4] We would like to watch the videotape of Ofc. [Steven] Scarpino after lunch[.]

As previously indicated, while the notes themselves are a matter of record, there is no indication in the record that the jury ever conveyed these notes to the trial court or that there were any communications between the court and the jury concerning the notes.

On appeal, defendant relies on MCR 6.414(B), which, at the time of trial and before its repeal effective September 1, 2011, provided, in pertinent part:

> The court may not communicate with the jury or any juror pertaining to the case without notifying the parties and permitting them to be present. The court must ensure that all communications pertaining to the case between the court and the jury or any juror are made a part of the record.

But because there is no indication that the trial court communicated with the jury or with any juror and defendant has not otherwise established factual support for his belief that any off-the-record communications occurred, defendant has not demonstrated a violation of MCR 6.414(B).

Although defendant also argues that prejudice must be presumed from the absence of a record, the authority he cites, *Valentine v United States*, 488 F3d 325, 334-335 (CA 6, 2007), only holds that a court's communications with a deliberating jury in the absence of counsel may be a critical stage of the trial at which a presumption of prejudice may attach. *Valentine* does not state that a presumption of prejudice arises from the absence of a record. Moreover, the court in *Valentine* recognized that not all communications between a court and a jury involve a critical stage of the trial at which counsel is required to prevent a presumption of prejudice from arising. *Id.* at 335. This is consistent with our Supreme Court's decision in *People v France*, 436 Mich 138; 461 NW2d 621 (1990), which defendant also cites.

In *France*, the Supreme Court explained that communications with a deliberating jury may be classified into three categories: substantive, administrative, or housekeeping. *Id.* at 142-143. The Court stated that substantive communications, which encompass supplemental instruction on the law, carry a presumption of prejudice, even in the absence of an objection. *Id.* at 143. Conversely, administrative communications, which include instructions regarding the availability of certain pieces of evidence, carry no presumption of prejudice and a party's failure to object when made aware of the communication "will be taken as evidence that the administrative instruction was not prejudicial." *Id.*

An examination of the juror notes in this case reveals that each refers to an evidentiary matter. None can be characterized as substantive or inviting a substantive communication. Indeed, defendant acknowledges in his brief that "the requests from the jurors appear to be administrative, not substantive." This acknowledgement weighs against defendant's claim that he is en-

titled to a presumption of prejudice. More importantly, as explained previously, defendant has not established that any off-the-record communications actually occurred in this case. Accordingly, defendant has not demonstrated a plain error affecting his substantial rights with respect to this unpreserved issue.

Defendant also argues that reversal is required because the trial court failed to conduct an evidentiary hearing to determine the effect of the jurors' exposure to extraneous comments. The record discloses that the trial court addressed this matter on the record after being informed that some spectators might have yelled something in a hallway where some jurors were present. The trial court determined that the comments were made by spectators associated with a different trial and did not involve a "tampering issue" or "threatening a juror." Therefore, nothing further needed to be done. Although defendant now argues that the trial court should have held a hearing to determine whether the jurors' exposure to the extraneous comments affected their ability to be fair and impartial, defense counsel affirmatively approved the trial court's handling of the situation at trial. Therefore, counsel waived any error. *People v Carter*, 462 Mich 206, 214-219; 612 NW2d 144 (2000). A waiver extinguishes any error. *Id.* at 216. Accordingly, there is no error to review.

### IV. SENTENCING AS AN HABITUAL OFFENDER

Lastly, defendant argues that he was improperly sentenced as a fourth-offense habitual offender. Defendant's argument presents two distinct questions: (1) whether the habitual-offender notice was timely filed and (2) whether the prior convictions listed in the habitual-offender notice were properly established. Because defendant never challenged the habitual-offender notice in the trial court and never challenged the accuracy or constitutional validity of

the prior convictions listed in the habitual-offender notice, these issues are unpreserved. Accordingly, we review these issues for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

MCL 769.12 provides that a person who has been previously convicted of three or more felonies shall be subject to an enhanced sentence if convicted of a subsequent felony. The procedure for seeking sentence enhancement is prescribed in MCL 769.13, which provides, in pertinent part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

> \* \* \*

> (4) A defendant who has been given notice that the prosecuting attorney will seek to enhance his or her sentence as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], may challenge the accuracy or constitutional validity of 1 or more of the prior convictions listed in the notice by filing a written motion with the court and by serving a copy of the motion upon the prosecuting attorney in accordance with rules of the supreme court.

> (5) The existence of the defendant's prior conviction or convictions shall be determined by the court, without a jury, at sentencing, or at a separate hearing scheduled for that purpose before sentencing. The existence of a prior conviction may be established by any evidence that is relevant for that purpose, including, but not limited to, 1 or more of the following:

> \* \* \*

(d) Information contained in a presentence report.

(e) A statement of the defendant.

Defendant argues that the habitual-offender notice was not timely filed because it was filed more than 21 days after the district court bound the defendant over to the circuit court, which occurred on September 23, 2009. However, the date of the bindover to circuit court is not one of the specified dates for measuring the timeliness of an habitual-offender notice. MCL 769.13(1) sets forth two dates for measuring the timeliness of that notice: (1) "21 days after the defendant's arraignment on the information charging the underlying offense" or (2) "if arraignment is waived, within 21 days after the filing of the information charging the underlying offense." Defendant argues that neither of these events occurred because he was never arraigned in the circuit court and he never formally waived arraignment. But if that were the case, then the statutory period for filing an habitual-offender notice was never actually triggered and the notice could not be considered untimely. Because it is undisputed that defendant was never arraigned on the underlying offense in the circuit court, the first period is not applicable. MCL 769.13(1) clearly contemplates that in the absence of an arraignment, the period for filing the habitual-offender notice is to be measured from the date the information charging the underlying offense is filed. In this case, the information charging the underlying offense, which was filed on November 2, 2009, included the habitual-offender notice. Therefore, we reject defendant's argument that the notice was not timely filed.

Defendant also argues that he was improperly sentenced as an habitual offender because his prior convictions were never properly established. Defendant never

challenged the accuracy or validity of his prior convictions in a motion pursuant to MCL 769.13(4). And even when a conviction is challenged, MCL 769.13(5)(d) and (e) permit the existence of the conviction to be established by information in a presentence investigation report or a statement of the defendant. Defendant's presentence investigation report includes each of the three convictions identified in the habitual-offender notice. Defense counsel informed the court at sentencing that he had reviewed the presentence investigation report with defendant and that there were no objections to the report. Further, the conviction information section of the sentencing information report listed "4th or subsequent" in the space for habitual-offender information and listed a score of 30 points for prior record variable 2, indicating that defendant has four or more prior, low-severity felony convictions. MCL 777.52(1)(a). At sentencing, defense counsel agreed with the total score of 70 points for the prior record variables. Under these circumstances, defendant has not demonstrated a plain error. The prior convictions were established by the unchallenged information in the presentence investigation report and defendant's acknowledgment that the prior record variables, which reflected defendant's prior convictions, were properly scored.

Affirmed.

SERVITTO, P.J., and FITZGERALD and TALBOT, JJ., concurred.