# STATE OF MICHIGAN

# COURT OF APPEALS.

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 9, 2014

Plaintiff-Appellee,

v

No. 317175
Oakland Circuit Court
LC No. 2012-243863-FC

DONALD KYLE RALEIGH,

Defendant-Appellant.

Before: BORRELLO, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right from his conviction following a jury trial for first-degree felony murder under MCL 750.316(1)(b), and first-degree child abuse under MCL 750.136b(2). He was sentenced as a habitual fourth offender, MCL 769.12, to respective prison terms of life without parole and 75 to 125 years. For the reasons set forth in this opinion, we affirm.

This case arises from the death of a child, DC, while the child was in defendant's care. Defendant called 911 and reported that DC was not breathing, and responding police officers and a paramedic found DC lying lifeless on the floor of defendant's home. The paramedic described DC's head as soft, like a water balloon, and took him to a hospital, where he was pronounced dead shortly thereafter. The emergency room physician who treated DC also compared his head to a water balloon, stating that it was soft in its entirety, extremely swollen, and full of blood. He opined that DC's injuries were the result of blunt force trauma that caused extensive skull fractures and stated further that:

> I've seen babies that have rolled off beds, I've seen babies that have rolled off couches, I've seen — you know the walkers that everybody used to use where they walk around, I've seen babies go down flights of stairs in a walker where all — the only thing that's basically unprotected is their head and arms, I've seen them fall out of grocery carts, I've never in my 20 years have seen injury like this to a baby's head.

A medical examiner who performed an autopsy on DC testified that he observed a total of five skull fractures that originated from different impact sites, i.e., different blows. He further opined it would take "a tremendous force" to produce DC's fractures, and that a baby usually cannot produce a skull fracture by falling two or three feet.

-1-

After DC was taken to the hospital, defendant agreed to go with a police officer to the Brandon Township substation of the Oakland County Sheriff's Office, where he was questioned over the course of five hours while being recorded. Defendant was placed into an interview room with a relatively comfortable chair and advised of his *Miranda*[1] rights after a preliminary discussion, and he signed a *Miranda* waiver.

After defendant was informed that DC had been pronounced dead, he asked to speak with a lawyer, and he was placed under arrest, handcuffed, and left alone in the interview room. Sometime thereafter, Detective Jennifer Harvey came in and talked to him. Later on, defendant told Officer Greg Glover that he wanted to talk, and Glover made him confirm that he wished to speak without the presence of a lawyer. Glover did not, however, readvise defendant of his *Miranda* rights. Defendant thereafter told Glover that he dropped DC from five feet, causing DC to hit his head on concrete, and that he dropped him another time. Before trial, defendant moved to suppress the DVD containing his custodial interrogations, arguing that his statements were involuntary. Following a hearing, the trial court entered an order denying defendant's motion. The trial court noted that that prosecutor agreed it would not introduce defendant's statements to Harvey at trial and concluded that defendant's remaining statements were voluntary and admissible.

On the beginning of the third day of trial, defendant's counsel requested, outside the presence of the jury, that if the prosecution admitted portions of the DVD that recorded defendant's custodial interrogation with Glover, then the portions of the DVD containing defendant's custodial interrogation with Harvey should also be admitted under the rule of completeness. The trial court agreed with defendant, but the prosecutor did not introduce the DVD and rested its case. Defendant proceeded to rest without testifying or calling any witnesses.

On appeal, defendant first argues that he is entitled to a new trial because the trial court improperly admitted the involuntary statements he made to Glover during his custodial interrogation. "This Court reviews de novo the question of voluntariness." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). "Deference is given, however, to the trial court's assessment of the credibility of the witnesses and the weight accorded to the evidence. The trial court's factual findings are subject to reversal only if clearly erroneous, meaning that this Court is left with a firm and definite conviction that a mistake has been made." *People v Ryan*, 295 Mich App 388, 396; 819 NW2d 55 (2012) (citation omitted).

Although defendant complains that the statements he made to Glover were involuntary and should not have been admitted during trial, the record is clear that these statements were not admitted. As plaintiff points out, defendant's counsel requested, outside the presence of the jury, that *if* the prosecution admitted portions of a DVD that recorded defendant's custodial interrogation with Glover, then the portions of the DVD containing defendant's custodial interrogation with Harvey should also be admitted under the rule of completeness. The trial court agreed with defendant, but the prosecutor then declined to introduce the DVD and rested its

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

case. Defendant proceeded to rest without testifying or calling any witnesses. Thus, the DVD containing defendant's statements to Glover was not admitted. Further, Glover did not testify at trial, and defendant's statements to him were not otherwise admitted. Because defendant's alleged involuntary statements to Glover were never admitted, no error occurred. See *People v Finley*, 431 Mich 506, 512; 431 NW2d 19 (1988) (opinion by RILEY, C.J.) (noting the "straightforward logic" that "error does not occur until error occurs; that is, until the evidence is admitted").[2]

Next, defendant argues that the trial court made a plain error affecting his substantial rights when it discharged the jury to deliberate without requiring the bailiff to swear the oath provided under MCL 768.16. Defendant concedes that he did not preserve this issue by raising it below. "To avoid forfeiture of an unpreserved, nonconstitutional plain error, the defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). An error is plain when it is clear or obvious. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error affects substantial rights when it "could have been decisive of the outcome" of the case. *People v Grant*, 445 Mich 535, 547; 520 NW2d 123 (1994). Further, "[r]eversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763 (citation and internal quotation marks omitted).

MCL 768.16 provides as follows:

> The jurors sworn to try a criminal action in any court of record in this state, may, at any time before the cause is submitted to the jury, in the discretion of the court, be permitted to separate or to be kept in charge of proper officers. *When an order shall have been entered by the court in which such action is being tried, directing said jurors to be kept in charge of such officers, the following oath shall be administered by the clerk of the court to said officers*: "You do solemnly swear that you will, to the utmost of your ability, keep the persons sworn as jurors on this trial from separating from each other; that you will not suffer any communication to be made to them, or any of them, orally or otherwise; that you will not communicate with them, or any of them, orally or otherwise, except by the order of this court, or to ask them if they have agreed on their verdict, until they shall be discharged; and that you will not, before they render their verdict, communicate to any person the state of their deliberations or the verdict they have agreed upon, so help you God." And thereafter it shall be the duty of the officer so sworn to keep the jury from separating, or from receiving any communication

---

[2] Moreover, although defendant identifies the arguments his trial counsel advanced when arguing that his statements were involuntary, he offers no explanation in support of his argument on appeal. Accordingly, we need not address it. *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009).

of any character, until they shall have rendered their verdict, except under a special instruction in writing from the trial judge. After the jurors retire to consider their verdict, the court may permit the jurors to separate temporarily, whenever in his judgment such a separation is deemed proper: Provided, that in cases where separation of the members of a jury is now forbidden by law, the authority hereby granted shall not extend to permitting separation of the members of the jury of the same sex. [Emphasis added.]

Defendant argues that the trial court plainly erred by not administering the oath under MCL 768.16 to the bailiff before discharging the jury to deliberate, but he ignores that the oath is only required when the trial court orders the jurors "to be kept in charge of proper officers." Here, defendant does not identify any such order. Accordingly, the trial court had no duty to administer the oath under MCL 768.16, and the fairness, integrity, and public reputation of the proceedings were not impaired.

Next, defendant raises two issues in his Standard 4 brief. First, defendant argues that he was wrongfully placed in double jeopardy for the same offense when the trial court allowed him to be convicted for felony murder and the predicate felony. Because defendant did not preserve this issue below, we review it for plain error affecting defendant's substantial rights. *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005).

"The United States and Michigan Constitutions protect a person from being twice placed in jeopardy for the same offense." *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). See US Const, Am V; Const 1963, art 1, §15. "The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *Nutt*, 469 Mich at 574. The third protection is at issue in this case, as defendant claims that his convictions for first-degree felony murder and the predicate felony punished him twice for the same offense.

In *People v Ream*, 481 Mich 223; 750 NW2d 536 (2008), our Supreme Court held that a defendant does not receive multiple punishments for the same offense in violation of the double jeopardy clauses when "each offense has an element that the other does not." *Id.* at 240. More important, the Court analyzed this principle in connection with first-degree felony murder under MCL 750.316(1)(b) and held that convicting and sentencing a defendant for first-degree felony murder and the predicate felony of first-degree criminal sexual conduct (CSC I) did not place the defendant twice in jeopardy. *Id.* at 241-242. The Court reasoned that because first-degree felony murder may be accomplished by committing one of several predicate felonies, it did not require proof of a sexual penetration, like CSC I. *Id.* at 241. The Court also explained that, unlike first-degree felony murder, CSC I did not require the killing of a human being. *Id.* Thus, the Court concluded that the offenses "are not the 'same offenses' under either the Fifth Amendment or Const 1963, art 1, §15," and that the defendant could be punished separately for each offense. *Id.* at 242.

Similarly, defendant in the case at hand was not placed twice in jeopardy when convicted and sentenced for first-degree felony murder and the predicate felony of first-degree child abuse, as each offense contains an element that the other does not. Unlike first-degree child abuse, first-

degree felony murder requires the killing of a human being; and unlike first-degree felony murder, first-degree child abuse requires harming a child. MCL 750.316(1)(b); MCL 750.136b(2). Accordingly, defendant's convictions and sentences did not violate his rights under the Fifth Amendment or Const 1963, art 1, §15.

Lastly, defendant argues that his trial counsel was constitutionally ineffective. "In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing." *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). In this case, defendant did neither. Accordingly, our review is limited to mistakes apparent on the record, *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004), and we find no such errors for the reasons explained below.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing Const 1963, art 1, § 20 and US Const, Am VI. To establish ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. See also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. See also *Strickland*, 466 US at 690-691. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). Such decisions may constitute ineffective assistance if they deprive the defendant of a substantial defense. See *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009); *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). A substantial defense is one that might have made a difference in the outcome of the trial. *People v Marshall*, 298 Mich App 607, 612; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013).

Defendant asserts that his trial counsel was ineffective for failing to call any witnesses, failing to interview witnesses in advance of trial, failing to instruct defendant regarding the importance of a preliminary hearing in district court, and failing to properly prepare defendant for trial. However, defendant provides no further argument or explanation in support of these assertions, and he does not cite any authority demonstrating that his trial counsel's performance fell below an objective standard of reasonableness. Accordingly, we need not consider it. *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009).

Nevertheless, defendant has failed to identify any mistakes apparent on the record. In *People v Pratt*, 254 Mich App 425; 656 NW2d 866 (2002), the Court stated as follows:

> Defendant argues his trial counsel was ineffective for failing to fully investigate two incidents and to call two witnesses who he maintains would have corroborated his testimony. We disagree.

. . . Here, defendant merely represents that these witnesses would have testified as he states. However, other than defendant's statements, there is simply no showing that these witnesses exist or that their testimony would have benefited defendant had they been called. Thus, there are no errors apparent on the record. Therefore, defendant's argument that he was denied the effective assistance of trial counsel is without merit. [*Id.* at 430.]

Defendant's argument is similarly lacking in merit, as he too has made no showing, other than this own assertions, that exculpatory witnesses exist or that their testimony would have benefited him had they been interviewed and called. Further, defendant does not argue or demonstrate that there is a reasonable probability the outcome of the trial would have been different had his trial counsel acted as defendant claims he should have. Accordingly, defendant has abandoned this argument. *Payne*, 285 Mich App 195. Additionally, we cannot glean anything from the record which would lead us to conclude that had counsel acted in any different manner, or produced additional witnesses, there exists a reasonable probability the outcome of the trial would have been different. The evidence against defendant in this case is best characterized as overwhelming. Simply put, the evidence admitted at trial clearly demonstrated that the victim sustained five skull fractures while in defendant's care from multiple blows requiring a tremendous amount of force, which could not be produced by falling several feet. Accordingly, defendant is not entitled to relief on any of the issues presented in this appeal.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens