*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARCUS LAMAR BIVINS,

        Defendant-Appellant.

UNPUBLISHED
April 25, 2019

No. 340305
Kent Circuit Court
LC No. 17-000191-FC

Before: BECKERING, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Defendant, Marcus Lamar Bivins, appeals as of right his jury trial conviction of first degree premeditated murder, MCL 750.316(1)(a). The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to a term of life imprisonment without parole. We affirm.

The pertinent facts are undisputed. In the early morning hours of April 30, 2016, defendant stabbed and killed the victim. Defendant admitted to the homicide. A former high school classmate of defendant, Jesiah Israel, testified that defendant entered the Meijer store where he worked at approximately 11:00 a.m. on April 30, 2016. Israel testified that, once they were alone, defendant disclosed that he had "caught a body" — that he had killed someone. Israel testified that defendant did not disclose why or who he killed but that defendant stated that he had always wanted to kill someone. Israel testified that defendant then removed a knife with blood on it from the pocket of his hooded sweatshirt but that defendant did not have any blood on him or his clothes. Israel testified that defendant appeared coherent and normal when he recounted the incident and that defendant continued into Meijer to shop after he disclosed the incident.

During an interview with Grand Rapids Police Department detectives, defendant admitted that he stabbed and killed the victim. Defendant told the police detectives that he heard voices—that one voice was good and Christian and another voice told him to "do monstrous things." Defendant told the detectives that something told him to choose the victim and that "it" told him to wait until she was sleeping to kill her. Defendant also told the detectives that defendant felt happy when he first saw the victim's blood and that he laughed when he heard the

-1-

victim wheezing. Defendant said he cried about the incident and that he said "I feel sorry about it, but I don't feel sorry about it, you know? It's just the voices in my head." Defendant told the detectives that he would have continued killing if he had not been caught. Before defendant received his sentence, defendant provided a written statement in which he stated that there were never voices and that he "lied about that to get off."

Dr. Trang Walker, a forensic psychologist at the Center for Forensic Psychiatry, conducted a criminal responsibility examination of defendant on March 27, 2017. The psychologist testified that, during the evaluation, defendant appeared dysphoric, sad, and lacking emotion but organized in his thoughts. Regarding defendant's background, the psychologist testified that defendant stated that he was removed from his mother's care and placed in foster care; he experienced a head injury at the age of four; he received outpatient treatment for Attention Deficit Hyperactivity Disorder and Bipolar Disorder; he had been hospitalized for psychiatric treatment; and, he was diagnosed with Conduct Disorder (where an adolescent disregards rules and societal norms) and a mood disorder. The psychologist testified that, at the time of the evaluation, defendant reported feeling depressed. but that the clinicians at the Kent County Correctional Facility questioned whether defendant reported this symptom to obtain more favorable housing in the mental health unit.

The psychologist testified that, in reviewing these records and conducting her in-person evaluation, she concluded that defendant did not suffer from a mental illness at the time of the charged offense, meaning that he did not lack a significant ability in his judgment or behavior, an ability to recognize reality, or an ability to cope with the ordinary demands of life. The psychologist also concluded that defendant was able to understand the consequences and wrongfulness of his actions, demonstrated by his statements concerning the stabbing and the victim's death and by his statements that he knew his actions were illegal and wrong in a moral sense. The psychologist testified that defendant had the ability to conform his conduct to the requirements of the law, but that he chose to engage in illegal behavior. Although the psychologist noted that defendant exhibited some traits and characteristics of antisocial personality disorder, she concluded that defendant's reports of hearing voices, without other disorganized or psychotic behaviors, did not indicate a mental illness. The psychologist stated that generally, someone in a psychotic state or someone who suffered from delusions would appear erratic and disorganized, but defendant appeared purposeful, goal-oriented, and organized.

Defendant filed a post judgment motion for a new trial and an evidentiary hearing on the basis of ineffective assistance of counsel regarding two issues: (1) defense counsel's failure to object to a faulty jury verdict form and defective jury instructions, and (2) defense counsel's failure to secure expert testimony on the issue of whether defendant was mentally ill or legally insane. The trial court denied defendant's motion for a new trial as to the first issue, but granted defendant's motion for an evidentiary hearing on the second issue.

At the evidentiary hearing, defense counsel testified that he sought an independent forensic evaluation of defendant and that the examiner concluded that there was no basis to find that defendant was criminally insane at the time of the incident. Defense counsel testified that his trial strategy was to focus on the defense of insanity for a verdict of not guilty, rather than arguing, in the alternative, that defendant was guilty but mentally ill. The trial court found that

defense counsel's decision to abstain from presenting an expert and to argue that the prosecution's expert was not credible was a sound trial strategy given the other evidence presented at trial. Additionally, the trial court found that a different result was not reasonably probable on the basis of the consistent and unequivocal conclusion of two experts that defendant was sane at the time of the offense. The trial court denied defendant's motion for a new trial on this issue. Defendant now asserts on appeal that he did not receive the effective assistance of counsel.

A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. We review factual findings for clear error, but we review de novo questions of constitutional law. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). In order to overcome this presumption, a defendant must show that: (1) defense counsel's performance did not meet an objective standard of reasonableness under the circumstances and according to prevailing professional norms and (2) there was a reasonable probability that, but for defense counsel's errors, the results of the proceeding would be different. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 312-313; 521 NW2d 797 (1994). Additionally, a defendant must show that the result that occurred was fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

Defendant first contends that counsel was ineffective for failing to object to a defective jury verdict form and defective jury instructions. We disagree.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. Further, a criminal defendant is deprived of his constitutional right to a jury trial when the jury is not given the opportunity to return a general verdict of not guilty." *People v Wade*, 283 Mich App 462, 467; 771 NW2d 447 (2009) (quotation marks and citations omitted). This Court reviews jury instructions in their entirety, and "[e]ven if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001).

Here, the verdict form provided the jury eight options from which to choose: (1) not guilty of first-degree murder; (2) not guilty of first-degree murder by reason of insanity; (3) guilty of first-degree murder; (4) guilty of first-degree murder but mentally ill; (5) not guilty of second-degree murder; (6) not guilty of second-degree murder by reason of insanity; (7) guilty of second-degree murder; and (8) guilty of second-degree murder but mentally ill. The jury had the opportunity to choose a general verdict of not guilty or a special verdict of not guilty by reason of insanity for either the primary charge of first-degree premeditated murder or the lesser included offense of second-degree murder. Additionally, the jury had the opportunity to make a finding as to defendant's legal insanity or mental illness by finding defendant not guilty by reason of insanity or guilty but mentally ill for either the charge of first-degree murder or the lesser included offense of second-degree murder. We conclude that the jury verdict form was not defective because the jury had the opportunity to return a general verdict of not guilty. See *Wade*, 283 Mich App at 468.

Further, the trial court properly instructed the jury on the choices provided on the jury verdict form. The trial court instructed the jury consistent with relevant portions of the Model Criminal Jury Instructions. See MCR 2.512(D)(2). The applicable jury instructions regarding the jury verdict options were the instructions of "legal insanity," "guilty but mentally ill," and "insanity at the time of the crime." M Crim JI 7.11; M Crim JI 7.12; M Crim JI 7.13. These jury instructions accurately state the applicable law and the elements of the insanity defense and the guilty but mentally ill verdict. See MCL 768.20a, MCL 768.21; MCL 768.21a; MCL 768.29a; MCL 768.36; see generally *People v Shahideh*, 482 Mich 1156; 758 NW2d 536 (2008) (interpreting the law and procedure concerning an insanity defense). Additionally, the trial court instructed the jury to choose only one verdict. The trial court further instructed the jury that, "if [it is] convinced that the defendant committed an offense, [it] should consider the defendant's claim that he was legally insane." The trial court also instructed the jury to consider whether defendant was mentally ill, but not legally insane, if it is convinced that defendant was guilty of a crime. Reviewing the jury instructions in their entirety, we conclude that the jury was properly instructed and defendant's right to a jury trial was therefore not violated. See *Aldrich*, 246 Mich App at 124.

Defendant next asserts that defense counsel was ineffective due to his failure to present an expert witness concerning defendant's legal insanity and mental illness. We disagree.

Defense counsel has wide discretion as to matters of trial strategy. *Unger*, 278 Mich App at 242. This Court presumes that decisions regarding whether to call or question a witness, including an expert witness, are matters of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense," i.e., a defense that might have made a difference in the outcome of the trial. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004); *People v Marshall*, 298 Mich App 607, 612; 830 NW2d 414 (2012), vacated in part on other grounds, 493 Mich 1020, 829 NW2d 876 (2013). Trial counsel is not, however, ineffective for failing to make meritless objections. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

Defense counsel sought an independent psychological evaluation of defendant and he additionally underwent a psychological examination by the state. On both occasions, the examiner concluded that there was no basis to find that defendant was criminally insane at the time of the offense. Thus, defense counsel attempted to cross-examine the prosecution's expert, focusing on the psychologist's lack of experience and arguing that the psychologist failed to diagnose a personality disorder when she examined defendant. Additionally, defense counsel focused on the defense of insanity for a verdict of not guilty, rather than presenting testimony to distinguish between the verdicts of guilty and guilty but mentally ill. We conclude that defense counsel's decision to abstain from presenting an expert witness was a sound trial strategy. See *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Additionally, defendant failed to show that defense counsel's alleged deficient performance prejudiced his case or deprived him of a substantial defense. Defense counsel raised the defense of insanity, even without an expert, and attempted to support that defense.

The jury was instructed on the relevant verdict options, including the insanity defense and the verdict of guilty but mentally ill. We conclude that defendant failed to establish that defense counsel's performance fell below an objective standard of reasonableness and that there was a reasonable probability that the jury verdict would have been different. See *Strickland*, 466 US at 687-688; *Solmonson*, 261 Mich App at 663-664.

Finally, in a Standard 4[1] brief, defendant argues that he did not receive effective assistance of counsel because his defense counsel failed to object to the bind over to the circuit court on the charge of first-degree premeditated murder. We disagree.

Defendant did not raise this issue in a motion for a new trial or in a request for an evidentiary hearing. See *Ginther*, 390 Mich at 443; *Wilson*, 242 Mich App at 352. Therefore, this issue is not properly preserved for appellate review. However, this Court may review unpreserved issues regarding ineffective assistance of counsel. In doing so, this Court's review is limited to errors apparent on the record. *Matuszak*, 263 Mich App at 48.

"Defense counsel must be afforded broad discretion in the handling of cases." *Pickens*, 446 Mich at 325 (quotation marks and citation omitted). And, trial counsel is not ineffective for failing to raise a futile objection or make a futile a motion. *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011) (quotation marks and citation omitted). Trial counsel's decision to abstain from challenging the sufficiency of the evidence to support probable cause and thus, a bind over, is not deficient if there was sufficient evidence to create a question of fact regarding whether the defendant committed the acts as charged. *Id.*[2]

Contrary to defendant's argument, defense counsel objected to the prosecutor's motion for a bind over on the charge of first-degree premeditated murder. Defense counsel argued at the conclusion of the preliminary examination that it was more appropriate to bind over defendant to the circuit court on the charge of open murder, a charge that included both first-degree premeditated murder and second-degree murder. Defense counsel in fact performed the conduct that defendant alleged was the basis of his ineffective assistance of counsel claim. Additionally, the jury fairly convicted defendant of first-degree premeditated murder, and the jury had the option to find defendant guilty of second-degree murder or not guilty of either offense. Therefore, the objection to the district court's decision to bind over defendant to the circuit court on the charge of first-degree premeditated murder was futile. See *Fonville*, 291 Mich App at

---

[1] See, Admin. Order No. 2004-6.

[2] See also *People v Wilson*, 469 Mich 1018; 677 NW2d 29 (2004) ("If a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover.").

384. We conclude that defendant failed to establish that defense counsel's performance fell below an objective standard of reasonableness and that there was a reasonable probability that the jury verdict would have been different. See *Strickland*, 466 US at 687-688; *Solmonson*, 261 Mich App at 663.

Affirmed.

/s/ Jane M. Beckering
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens