# Court of Appeals, State of Michigan

## ORDER

People of MI v Timothy Jordan

Docket No. 317644

LC No. 12-005149-FC

Michael J. Kelly
Presiding Judge

Mark J. Cavanagh

Patrick M. Meter
Judges

The Court orders that the motion for reconsideration is GRANTED, and this Court's opinion issued April 2, 2015 is hereby VACATED. A new opinion is attached to this order.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JUN 16 2015
_____
Date

_____
Chief Clerk

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 16, 2015

Plaintiff-Appellee,

v

No. 317644
Jackson Circuit Court
LC No. 12-005149-FC

TIMOTHY JORDAN,

Defendant-Appellant.

ON RECONSIDERATION

Before: M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with intent to rob while armed, MCL 750.89; armed robbery (2 counts), MCL 750.529; possession of a firearm during the commission of a felony (felony-firearm) (4 counts), MCL 750.227b; carrying a concealed weapon (CCW), MCL 750.227; and felon in possession of a firearm, MCL 750.224f. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 35 to 70 years in prison for his assault conviction, 35 to 70 years for his armed robbery convictions, 58 to 90 months for his felon-in-possession conviction, 58 to 90 months for his CCW conviction, and two years for each felony-firearm conviction. We affirm.

I. FACTUAL BACKGROUND

Defendant's conviction of assault with intent to rob while armed and the accompanying felony-firearm charge stemmed from a thwarted robbery attempt at Corner's Party Store in Jackson, Michigan. The owner of the store, Samar Musharbash, testified that on July 3, 2012, he was alone in the store when an African American man wearing a black hooded sweatshirt, dark pants, and a nylon mask over his face ran in, climbed onto the counter, pointed a small, shiny, silver handgun at him, and demanded money. Musharbash threw a stapler at the man and hit him in the head. The man then fled the store.

Musharbash was unable to identify defendant in a black-and-white photo lineup shortly after the incident. However, about four months later, he identified defendant as the perpetrator after viewing a color photo lineup. Musharbash also identified defendant during the preliminary

examination and at trial.  Finally, Musharbash identified defendant's gun as the same gun that had been used during the incident.

Defendant's first armed robbery conviction and the accompanying felony-firearm charge stemmed from a second incident at Corner's Party store.  Jacob Thompson and Lori Bregg were working when a man came into the store wearing a red hooded sweatshirt, dark pants, and a nylon mask over his face.  The man, whom Bregg identified as a prior customer, was carrying a small, shiny gun, which he pointed at Thompson.  He demanded money and ordered Thompson to get on the floor.  On the man's orders, Bregg went around the counter and gave him the money from the register drawers.  She testified that the man demanded the money from the safe as well, but she told him that she did not know how to open it.  After Bregg put the money in a black plastic bag with gold lettering, the man left.  Bregg called 911 immediately, relating that the store had just been robbed and that the perpetrator was one of her customers.

Bregg identified defendant almost immediately after seeing a photo lineup.  She also identified defendant in court as both a customer and the perpetrator.  Both Thompson and Bregg identified defendant's gun as the gun that was used during the robbery.

The final armed robbery conviction and accompanying felony-firearm charge stemmed from an incident at a Subway restaurant in June 2012.  Kenneth Griffes-Mohney testified that a man wearing a hooded sweatshirt, dark pants, gloves, and a nylon mask over his face grabbed his wrist, pointed a gun at him, and demanded the money from the register and the safe.  Because the safe was on a timed lock, Griffes-Mohney waited for four or five minutes.  At one point, his pregnant coworker and her husband came in, but he asked them to wait outside.  He said that defendant left about a minute later with the money from the register but not the safe.  In December 2012, Griffes-Mohney was shown a photo lineup and identified defendant as the perpetrator.  He also identified defendant as the perpetrator during trial.

Defendant's convictions for carrying a concealed weapon and for being a felon in possession of a firearm, and the remaining felony-firearm charge, arose from his arrest.  At that time, a .25 caliber semi-automatic handgun was concealed in defendant's pocket.  Defendant admitted that he was guilty of these weapons offenses.  He explained that he carried the gun for protection when he was in the "hood."

The gun was admitted at trial and was identified by all the eyewitnesses as the same gun used by the perpetrator of the crimes.  However, defendant maintained that his friend, Orlando Johnson, must have taken the gun on three occasions and used it to commit the crimes.  There was testimony that, at least for a while, Johnson was a suspect along with defendant.  However, the police testified that Johnson was not included in any of the photo arrays presented to the witnesses because he did not match the build of the man in the surveillance videos.

When defendant was arrested he had over $1000 in cash on him.  Linda Moten, defendant's roommate, testified that she had given him about $670 and that defendant's girlfriend had given him about $240.  Defendant presented witnesses who testified that defendant frequently had large sums of cash.

In a search of defendant's residence, police recovered several black plastic thank-you bags with gold lettering, some nylons that were knotted at the top, and a pair of black gloves. Defendant presented testimony that it was not uncommon for people to wear nylons over their hair. He also presented testimony that the plastic bags came from "Yogi's" and were common in the community. Finally, he testified that the gloves were not his and that they probably belonged to Johnson.

Finally, there was testimony that defendant was at Yogi's Party Store the same day as the armed robbery of Bregg. However, Shawn Perkins, an employee of Yogi's, explained that he told defendant about the robber, but could not recall if defendant came into the store before or after he had learned about the robbery, could not recall what defendant was wearing, and did not know what time the Corner's robbery occurred. Perkins opined that defendant did not look sweaty or like he had been running. However, after listening to a surveillance video of one of the incidents, he testified that the voice of the man in the video sounded like defendant's voice. Moreover, a detective, who had listened to about ten hours of jail conversations, believed that the voice in the surveillance video belonged to defendant.

## II. WAIVER OF THE RIGHT TO COUNSEL

Defendant first argues that his waiver of counsel was invalid because the trial court did not substantially comply with the waiver requirements. We disagree.

We review for clear error the trial court's factual findings regarding a defendant's waiver of the right to counsel. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). We review the application of constitutional standards to uncontested facts and any interpretation of the law de novo. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). We review de novo questions involving the interpretation of court rules. *People v Petit*, 466 Mich 624, 627; 648 NW2d 193 (2002).

In Michigan, a criminal defendant has a constitutional and statutory right to represent himself. Const 1963, art 1, § 13; MCL 763.1.[1] However, several requirements must be met before a defendant may proceed in propria persona. *Russell*, 471 Mich at 190-191. The trial court must make three findings:

> First, the waiver request must be unequivocal. Second, the trial court must be satisfied that the waiver is knowingly, intelligently, and voluntarily made. To this end, the trial court should inform the defendant of potential risks. Third, the trial court must be satisfied that the defendant will not disrupt, unduly inconvenience, and burden the court or the administration of court business. [*Williams*, 470 Mich

---

[1] The right to self-representation is also guaranteed by the United States Constitution. US Const, Am VI; *Martinez v Court of Appeal of California, Fourth Appellate Dist*, 528 US 152, 154; 120 S Ct 684; 145 L Ed 2d 597 (2000).

at 642, citing *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976).]

In addition, substantial compliance with MCR 2.6005(D) is required to secure a valid waiver. *Russell*, 471 Mich at 191. MCR 6.005(D) provides, in pertinent part:

The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

"Substantial compliance requires that the [trial] court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Russell*, 471 Mich at 191. If the trial court fails to substantially comply with these requirements, then the waiver of the right to the assistance of counsel is not effective. *Id*. at 191-192. Every reasonable presumption should be made against waiver of the right to counsel. *Id*. at 188.

Here, all of the requirements were substantially met. First, defendant unequivocally asked to represent himself when he stated, "I want to be allowed to represent myself." Second, the trial court implicitly determined that defendant's assertion of his right was knowing, intelligent, and voluntary. Whether a waiver of counsel is knowing and intelligent depends on the particular facts and circumstances of a case. *People v Riley*, 156 Mich App 396, 399; 401 NW2d 875 (1986), overruled in part on other grounds by *People v Lane*, 453 Mich 132; 551 NW2d 382 (1996). Here, the trial court ensured that defendant's request to waive counsel was knowingly and intelligently made. The court asked questions about defendant's understanding of the Rules of Evidence, criminal procedure, constitutional law, and criminal law. When defendant expressed confusion or misstated the rules or the process, the trial court pointed out defendant's deficiencies. The court also stated that defense counsel would be available on standby, to which defendant responded that he would keep defense counsel as "co-counsel if there's anything that I don't know." Defendant's response indicates that he understood what the court was pointing out—that his knowledge of legal principles and procedures could be deficient. Defendant also stated that defense counsel "knows a lot of things that I don't know" and he told defense counsel that he wanted him to remain present. The court clarified and defendant acknowledged understanding that the court's role was not to serve as defense counsel. Moreover, the court explained that defendant would not be permitted to make an opening statement because one had already been made while he was represented and added that defendant would get to make a closing argument. The court explained that if defendant wanted to move to admit exhibits into evidence he would first have to wait for his case and then would possibly need the assistance of an attorney to figure out the foundations. Finally, defendant asked

-4-

whether he would be permitted to consult with witnesses and the court responded that he would be permitted to do so. These exchanges show that defendant was determined to represent himself in spite of his limited legal knowledge. Although the trial court did not go through a formal recitation of all of the potential risks defendant would face if he chose to waive counsel and represent himself, the trial court was only required to substantially comply with the waiver requirements by discussing "the substance" of *Anderson* and the court rule with defendant. *Russell*, 471 Mich at 191-192. After reviewing the trial court's questions and responses to defendant's questions, we conclude that defendant's decision to waive counsel was knowing, intelligent, and voluntary. See *Williams*, 470 Mich at 642.

The third requirement is that the trial court must be satisfied that defendant "will not disrupt, unduly inconvenience, and burden the court or the administration of court business." *Id*. Again, although the trial court made no express findings on this, the record clearly supports the trial court's ultimate decision to allow defendant to represent himself. The trial court made it clear that defendant would not be permitted to simply decide halfway through representing himself that he wanted a new attorney and a mistrial, that defendant's current defense counsel would remain available on standby as a resource for defendant, and that, should defendant again want representation, his current defense counsel would be allowed to step in. In other words, the court made sure that defendant knew he could not simply disrupt the entire trial. Further, defendant's responses to the trial court's statements with regard to opening statements, closing arguments, recalling witnesses, talking with witnesses before they testified, and admitting exhibits indicated that defendant was reasonable and would not disrupt the court.

The trial court also substantially complied with MCR 6.005(D)(2) because it required that standby counsel be available for defendant to consult during his self-representation. Finally, the court substantially complied with MCR 6.005(D)(1). During the colloquy with defendant, the trial court never mentioned the potential penalties defendant would face if convicted. However, MCR 6.005(D) does not require the court to advise a defendant of the charge, the maximum possible prison sentence for the offense, and any mandatory minimum sentence *after* defendant makes a waiver of counsel request. It states that a court may not permit a waiver of counsel "without first . . . advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation . . . ." Because defendant was previously advised of the pertinent information, the requirements of the court rule were met. During arraignment on the charges, defendant was informed of the maximum penalties for each charge and the mandatory minimum sentences associated with the felony-firearm charges. Because that happened "first," i.e. before the court permitted defendant to waive his right to counsel, the trial court substantially complied with MCR 6.005(D)(1) even though it did not go through the charge, maximum sentence, and possible mandatory minimum sentences after defendant made his request to waive counsel.

### III. HABITUAL OFFENDER NOTICE

Defendant next argues that the trial court erred in sentencing him as a fourth-offense habitual offender because he was not provided with the requisite notice of intent to seek a sentencing enhancement.

To preserve a claim that an habitual offender notice was untimely filed, a criminal defendant must challenge the habitual offender notice in the trial court. *People v Marshall*, 298 Mich App 607, 625-626; 830 NW2d 414 (2012), judgment vacated in part on other grounds 493 Mich 1020 (2013). Here, defendant did not do so. We review unpreserved issues for plain error that affected a defendant's substantial rights. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

Pursuant to MCL 769.13(1), "the prosecuting attorney may seek to enhance the sentence of the defendant . . . by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense." Further, MCL 769.13(2) states that "[t]he notice *shall* be filed with the court and served upon the defendant or his or her attorney within" the 21-day period (emphasis added). This Court has recognized that MCL 769.13 should be strictly applied because the statute's plain language supports no other interpretation. *People v Morales*, 240 Mich App 571, 575-576, 586; 618 NW2d 10 (2000).

Parts of this case are controlled by *Marshall*, *supra*. For unknown reasons, defendant (who was originally charged in four separate cases) was subject to district-court arraignments but was never arraigned on the informations in the circuit court. In such a circumstance, even in the absence of a waiver, "the period for filing the habitual-offender notice is to be measured from the date the information charging the underlying offense is filed." *Marshall*, 298 Mich App at 627. In dockets nos. 12-005116-FC, 12-005117-FH, and 12-004013-FC,[2] the habitual offender notices were filed with the original informations, making them timely.

In docket no. 12-005149-FC, however (charging assault with intent to rob while armed and felony-firearm), the original information, filed on January 23, 2013, did not include an habitual offender enhancement; this enhancement was not added until March 5, 2013—past the 21-day period. A plain error did occur, but we cannot find that it affected defendant's substantial rights. Indeed, not only had defendant been put on proper notice by January 23, 2013 (when the informations were filed in docket nos. 12-005116-FC and 12-005117-FH) that he would have to defend against an habitual offender enhancement,[3] but also his sentence for felony-firearm is the same as it would have been without the habitual offender enhancement, and his sentence for assault is identical to and to be served concurrently with his sentences for his armed robbery

---

[2] The original informations for docket nos. 12-005117-FH, 12-005116-FC, and 13-004013-FC are not included in the lower court record provided to this court on appeal. However, on appeal, the prosecutor has provided copies of the original informations filed in these cases and they have been certified by the Jackson County Clerk's office as true and correct reproductions of the original records on file with the clerk's office. Accordingly, they are properly considered on appeal. See MCR 7.210(A)(1) (stating that the record on appeal from a lower court includes "the original papers filed in that court or a certified copy.").

[3] The prior convictions listed in docket no. 12-005117-FH were identical to those listed in the untimely notice for docket no. 12-005149-FC.

convictions. See, e.g., *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (indicating that a plain error affects substantial rights if the error causes prejudice). Under these unique circumstances, we find no basis for resentencing.

## IV. JOINDER

Defendant next argues that the trial court erred in joining the armed robbery cases and the assault case for trial. We disagree.

The trial court's ultimate decision on joinder of offenses is reviewed for an abuse of discretion. *People v Duranseau*, 221 Mich App 204, 208; 561 NW2d 111 (1997). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

MCR 6.120 governs joinder of offenses charged in multiple informations against a single defendant. MCR 6.120(B) provides, in pertinent part:

> (B) Postcharging Permissive Joinder or Severance. On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant . . . when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

"To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009).

Defendant argues that the armed robbery against Bregg, the armed robbery against Griffes-Mohney, and the assault against Musharbash were unrelated. The trial court found that pursuant to MCR 6.120(B)(1)(c) the incidents were a series of acts constituting parts of a single scheme or plan. We conclude that the trial court did not violate the unambiguous language of MCR 6.120. The offenses were "related" under MCR 6.120(B)(1)(c). In all three cases,

defendant was engaged in a scheme to obtain money by robbing businesses using a small, shiny handgun. During each incident he dressed similarly, wearing a hooded sweatshirt, black or dark pants, and a nylon over his face. During each incident defendant either climbed onto the counter when demanding the money or he went around the counter. Further, during the armed robberies, defendant demanded money from both the safe and the register. Additionally, the same handgun was identified by the witnesses to each incident and was, in fact, found in defendant's pocket when he was arrested. Accordingly, the offenses were not "related" just because they were "of the same or similar character." *Williams*, 483 Mich at 235 (citation and quotation marks omitted). The incidents were related because they showed a common plan or scheme. MCR 6.120(B)(1)(c).

Further, if the charges had not been joined the evidence of each charged offense could have been introduced in the other trials under MRE 404(b). See, e.g., *People v Sabin (After Remand)*, 463 Mich 43, 63-65; 614 NW2d 888 (2000). Indeed, the prosecutor moved to allow MRE 404(b) evidence as an alternative to its motion to consolidate, and the court held that if it did not join the cases, it would have allowed the evidence of each incident as other-acts evidence during each of the other trials. Accordingly, even if the trial court erred in joining the charges, any error would not have been outcome-determinative. *Williams*, 483 Mich at 245.

## V. PHOTO LINEUP

Defendant next argues that he was denied a fair trial when the photo lineup for the Subway robbery was conducted without counsel after defendant had been arraigned on the other cases. We disagree.

As an initial matter, we note that the record does not indicate one way or the other whether defense counsel was present at the Subway photo lineup. However, assuming arguendo that counsel was not present, we hold that defendant is not entitled to relief on this issue.

A defendant's entitlement to counsel at photographic identification proceedings is "limited 'to situations where the accused is in custody at the time.'" *People v Kurylczyk*, 443 Mich 289, 299; 505 NW2d 528 (1993), quoting *People v Cotton*, 38 Mich App 763, 768; 197 NW2d 90 (1972)). Thus, "[i]n the case of photographic identifications, the right of counsel attaches with custody." *Kurylczyk*, 443 Mich at 302. Moreover, "[t]he rule that a defendant is entitled to counsel at a corporeal lineup . . . when he is in custody[] usually[] requires that custody be pursuant to the offense in relation to which the lineup is held." *People v Wyngaard*, 151 Mich App 107, 113; 390 NW2d 694 (1986). If a defendant is in custody on a different offense, he is not afforded the right to counsel at photographic lineups for offenses where he is merely a suspect. See *id.* Accordingly, even if defendant was not represented by counsel at the Subway photo lineup, there was no error because defendant was not entitled to the presence of defense counsel.

Defendant also argues that the photographic lineup presented to Griffes-Mohney was unduly suggestive in violation of his right to due process under the Fourteenth Amendment. "In order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302. Generally, a photo array is not

suggestive if it contains some photographs that are fairly representative of the defendant's physical features and thus are sufficient to reasonably test the identification. *Id*. at 304. Here, defendant does not explain how the photographic array was unduly suggestive. Thus, he has failed to meet his burden of showing that the pretrial identification procedure was unduly suggestive. *Id*. at 302. Moreover, the photo array shown to Griffes-Mohney was admitted at trial. The exhibit shows six photographs, three in the top row and three in the bottom row, depicting six black men with somewhat similar features. Nothing in the photographs appears to single defendant out from the others. On this record, we hold that defendant's claim that the array was unduly suggestive is without merit.

## VI. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence of his identity as the person who committed the subject crimes. We disagree.

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). For a conviction to be upheld, due process requires that when the evidence is viewed in the light most favorable to the prosecution, a reasonable trier of fact could have found each element of the crime established beyond a reasonable doubt. *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). It is the trier of fact's role to judge credibility and weigh the evidence. *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011). Identity is an essential element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

Defendant argues that there was insufficient evidence because the eyewitness identifications were unreliable. He appears to argue that this evidence was not credible because the witnesses initially gave descriptions that did not match defendant's height, weight, and age; because Musharbash did not identify defendant as a customer until November; because the perpetrator was wearing a nylon mask; because the in-court identifications did not meet the standard set forth in *People v Davis*, 241 Mich App 697, 702-703; 617 NW2d 381 (2000);[4] and because the Michigan Supreme Court recognized in *People v Anderson*, 389 Mich 155, 180; 205 NW2d 461 (1973), overruled in part in *People v Hickman*, 470 Mich 602; 684 NW2d 267

---

[4] In *Davis*, 241 Mich App at 702-703, this Court restated the nonbinding factors required for an independent in-court identification:

> (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant.

(2004), that there were serious problems and limitations with eyewitness identification. Besides quoting the factors from *Davis* and some language on the limitations of eyewitness identification, defendant does not sufficiently explain how the case law would apply to negate the in-court identifications provided by Musharbash, Bregg, and Griffes-Mohney. Further, defendant offers no analysis of why Musharbash's and Bregg's identifications from the photo lineups should not be considered when viewing the sufficiency of the evidence. Finally, there is no reason not to consider the photo identification provided by Griffes-Mohney. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Accordingly, the issue is abandoned to the extent defendant is challenging the identifications and asking us not to consider them when making a decision on the sufficiency of the evidence.

"[T]his Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime." *Davis*, 241 Mich App at 700. Further, "[t]he credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id*. The jury is free to believe or disbelieve the evidence presented. *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). Moreover, in the context of a sufficiency analysis, conflicts in the evidence must be resolved in favor of the prosecution. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). In this case, the jury believed the eyewitness testimony identifying defendant as the perpetrator. The testimony established that witnesses identified him in a photographic lineup and with in-court identification. The testimony also established that witnesses identified defendant's gun as the gun that was used during the incidents. Defendant does not challenge the witnesses' identification of the gun or contest that it was found on his person when he was arrested. Further, a detective opined that defendant's voice was in one of the surveillance videos. Finally, there was physical evidence; the police found knotted nylons in defendant's residence along with black bags similar to the one described during Bregg's testimony. On these facts, there was sufficient evidence to convict defendant.

## VII. IMPROPER TESTIMONY

Finally, defendant argues that the trial court erred in allowing testimony that defendant was a suspect in some uncharged McDonald's robberies. We agree; however, because we hold that the error was harmless, defendant is not entitled to relief with respect to this issue.

To preserve an evidentiary issue, the appellant generally must challenge it before the trial court on the same grounds as he challenges it on appeal. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Here, defendant asked if he could object to testimony about the McDonald's robberies. The court said it was overruling the objection because the subject came up during defendant's testimony. Defendant failed to actually state what objection he was going to make. Accordingly, this issue is not preserved. Unpreserved issues are reviewed for plain error affecting a defendant's substantial rights. *Jones*, 468 Mich at 355.

"Generally, all relevant evidence is admissible except as otherwise provided by either the state or the federal constitution or by court rule." *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013), citing MRE 402. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence." MRE 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. Here, it is apparent that the evidence was inadmissible. First, the evidence that defendant was a suspect in the McDonald's robberies was evidence of an uncharged crime. Accordingly, in order to be admissible in general, it would have to be admissible other-acts evidence pursuant to MRE 404(b), but the prosecutor does not make this argument. However, even inadmissible evidence may be admitted if a defendant "opens the door" by bringing up the typically forbidden information. See, generally, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 2010) (holding that the defendant opened the door to otherwise inadmissible testimony about a witness's credibility by pointing out inconsistencies in his companion's statements to the police). The prosecutor argues that defendant opened the door when he testified that Johnson was a suspect in the McDonald's robberies. However, even if defendant opened the door to Johnson's involvement, the prosecutor impermissibly expanded the scope of the questioning when he solicited testimony that both Johnson and defendant were suspects in the McDonald's robberies and asked numerous questions pertaining to defendant's alleged involvement that led to a large amount of detail concerning the alleged involvement. That defendant proceeded to ask questions concerning his alleged involvement in these robberies does not somehow make the prosecutor's first expansion of the line of questioning proper. Accordingly, we hold that defendant did not open the door to the challenged testimony.

However, a trial error in admitting evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears more probable than not that the error was outcome-determinative. MCL 769.26; *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). This Court must "focus[] on the nature of the error and assess[] its effect in light of the weight and strength of the untainted evidence." *Id*. at 495 (citation and quotation marks omitted). The untainted evidence showed that defendant admitted he was guilty of carrying a concealed weapon, being a felon in possession of a firearm, and committing at least one felony-firearm charge. The untainted evidence supporting his conviction for assault with intent to rob while armed and the underlying felony-firearm conviction included Musharbash's identification of defendant in a photo lineup, in district court, and during trial. Further, it included Musharbash's identification of the gun defendant admitted he owned as the same gun that was used during the incident. Further, the physical evidence located during the search of defendant's residence included knotted nylons similar to the one Musharbash testified defendant was wearing. The untainted evidence supporting defendant's conviction of armed robbery of Bregg and the underlying felony-firearm was supported by Bregg's identification of defendant as a customer on the 911 tape, her identification of him as the robber during a photo lineup, and her identification of him in court. Further, both Bregg and Thompson testified that defendant's gun was the same gun that was used during the robbery. Moreover, there was testimony that the voice of the man in the surveillance video sounded like defendant. Also, the physical evidence located in defendant's home supported the conviction. Finally, the untainted evidence for the Subway robbery included Griffes-Mohney's identification of defendant as the robber in both the photo lineup and in court. Further, the physical evidence from defendant's house also supported his conviction. On the whole, it does not affirmatively appear that the error asserted has resulted in a miscarriage of justice. MCL 769.26.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter