*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 1, 2024

Plaintiff-Appellee,

v

No. 359649
Jackson Circuit Court
LC No. 18-002412-FC

SAVANNA ALLYSE FRINKLE,

Defendant-Appellant.

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

In this interlocutory appeal, defendant, Savanna Allyse Frinkle, appeals as on leave granted[1] an order denying her request to call a defense attorney expert at a *Ginther*[2] hearing, following her conviction for second-degree murder. On appeal, Frinkle argues that the trial court erred by denying her request to present expert-witness testimony on the prevailing standard of professional competence related to an ineffective-assistance-of-counsel claim. Frinkle also argues that she is entitled to remand to a different judge because the trial court expressed favorable personal and professional bias toward trial counsel, an unfavorable professional bias against her proposed expert at the *Ginther* hearing, and a bias against postconviction motions (including comments about her own) while presiding over another case. We conclude that the trial court did not abuse its discretion when it refused to allow Frinkle's proposed expert on criminal defense practice to testify. We nonetheless conclude that the trial judge's statements about Frinkle's case during another proceeding and negative comments regarding the frequency of postconviction motions objectively create a serious risk of actual biases. We therefore remand the case for continued proceedings before a different judge.

---

[1] *People v Frinkle*, 510 Mich 1117 (2022).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

I. BACKGROUND

In the case underlying this interlocutory appeal, Frinkle was convicted of second-degree murder, MCL 750.317, and sentenced to 22 to 60 years' imprisonment. At trial, trial counsel engaged in a series of confusing actions, most notably, telling the jury the case was about self-defense and that they would be instructed on that defense, then abandoning the defense without explanation or an immediately discernable strategy.

Frinkle filed a motion for a new trial and moved for an evidentiary hearing regarding her allegation that trial counsel was ineffective for promising the jury that it would be instructed on self-defense and then abandoning that defense in front of the jury despite a factual basis existing for the jury instruction. Frinkle also alleged that trial counsel was ineffective for allowing the jury to hear an inaccurate jury instruction on voluntary manslaughter. Notably, the prosecutor agreed that an evidentiary hearing would be necessary to clarify some of the mercurial decisions trial counsel made during the case.

Critical to this appeal, at the *Ginther* hearing, the trial court made a series of statements about Frinkle's trial counsel and her proposed criminal defense expert. First, at the start of the *Ginther* hearing, the trial court disclosed that trial counsel served as his first law clerk and that he had known him his entire career. The trial court further stated that trial counsel was "a lawyer that regularly practices and with a great deal of skill and proficiency in my courtroom." Additionally, during direct examination of trial counsel regarding his reasoning for abandoning a self-defense theory, the trial court interjected:

> And I just want to note something from [sic] the record, I mean, I've seen this strategy sit in [sic] on the bench for 20 years, I have defense attorneys that get up in front of me and say, oh, for the very first time in my career I'm gonna admit my clients guilty of a crime even when I've seen the same technique before, and I think that they often do that because they want the jury to lock on to a lesser included offense and they think that that gives them some credibility.
>
> So it's certainly a tactic that I've seen relatively frequently in my courtroom over the last two decades.

After trial counsel testified at the *Ginther* hearing, appellate counsel attempted to present expert testimony from attorney Karl Numinen regarding best practices for presenting a self-defense claim and the prevailing norms for competent legal representation. Numinen is a seasoned criminal defense attorney based in Marquette, Michigan. At the time of the *Ginther* hearing, he was the president of the Criminal Defense Attorneys of Michigan (CDAM), a statewide association of criminal defense attorneys focused on training, education, and enhancing the quality of representation of indigent defendants and other persons accused of crimes.[3] The prosecution

---

[3] Arguably the defense counterpart to the Prosecuting Attorney Association of Michigan (PAAM), our Supreme Court routinely solicits amici briefs from CDAM and PAAM on emerging criminal law and procedure issues.

objected to Numinen's testimony. Without inquiring further into Numinen's credentials or proposed findings, the trial court determined that the proposed expert witness's testimony was inadmissible under MRE 702:

> Well, with all—with all due respect, the court is the gatekeeper of admissible evidence and I'm gonna rule under MRE 702—I don't think that there's anything helpful this person can tell me. I mean, I don't know that he's F. Lee Bailey. I doubt it. I don't know that he's even—even as experienced of a trial attorney as [trial counsel]. In every single *Ginther* Hearing I've heard, you know, has went the way kinda that we went, you brought in the defense attorney, you looked at the transcripts, you looked at the jury instructions, you looked at this very fluid event, this trial that occurred. And I know dog gone well what he's gonna get up there and say, he's gonna get—"Oh, I think [trial counsel] made some mistakes about self-defense or maybe going for manslaughter," or whatever, but the thing is, he wasn't sitting there, he didn't go over to the jail cell, he wasn't looking over all the evidence, he wasn't here at trial, so I'm not hearing this testimony.

> So, I'm disallowing it under MRE 702. I think it's a dangerous precedent. I think it's—it's just an unnecessary development that we need to have. And then every trial that some defendant gets convicted of murder, now I got to bring in some lawyer from the U.P. to tell me whether our local counsel conducted himself in a professional and appropriate manner? Not in my courtroom.

After rejecting the proposed expert witness, the trial court stayed further proceedings in the evidentiary hearing pending the outcome of an interlocutory appeal. While acknowledging the possibility of an interlocutory appeal and the need for a stay of proceedings, the trial court said to the proposed expert, "Court of Appeals tells me that they need me to hear from you and all your experience to second guess another lawyer, then I'll let your testimony in, but until that happens, continue to have a good professional life up in the U.P." Frinkle filed an interlocutory application for leave to appeal, which this Court denied.[4]

Following the denial, Frinkle filed a motion for reconsideration after obtaining transcripts that appear to document the trial judge referencing Frinkle's evidentiary hearing and proposed expert during another case. The other case involved the same trial judge, the same prosecutor, and another attorney from State Appellate Defender Office, the same indigent defense organization that represents Frinkle in this appeal. The hearing at issue was a January 2022 evidentiary hearing for an ineffective-assistance-of-counsel claim. See *People v McPherson*, Jackson County Case No. 2018-4024-FH.[5]

---

[4] *People v Frinkle*, unpublished order of the Court of Appeals, entered May 20, 2022 (Docket No. 359649).

[5] Frinkle has provided this Court with a certified transcript of the evidentiary hearing. We take judicial notice of the facts contained in the transcript. See MRE 201(b) (permitting the Court to

At the hearing, the trial judge seemed to deride ineffective-assistance-of-counsel claims and *Ginther* hearings in general. In response to information from the courtroom clerk regarding a scheduling matter, the trial judge stated:

> I don't know why but all of a sudden I'm hearing a lot of Ginther hearings. Even against really good defense attorneys . . . is it like the new de-jour [sic] appeal, or what? I mean, you know, when I've been on the bench for 20 years and all of a sudden I get a whole bunch of Ginther hearings all of a sudden. "It's basically, I guess, oh, we're at the appellate level and we're gonna determine that the trial lawyer didn't know what the heck they were doing. Okay, well, we're gonna set it, we're gonna take – what do you need, a couple of days of my docket time to have this Ginther hearing?

After scheduling the hearing, the trial court also ostensibly referenced the facts of Frinkle's case and her proposed expert, and appeared to express aversion to legal expert testimony. After the attorney indicated her intention to call an expert to address issues of mental illness and legal insanity, the trial judge stated:

> Well, I'm just gonna warn you, the last time I did one of these, you know, you bring in – they were gonna bring in a lawyer from Marquette to come up and tell me what a – what a terrible job attorney Andy Kirkpatrick did in a trial, and you know what, I'm – as far as I'm concerned it's my discretion. I can't imagine this guy had the kind of trial skills and background to do that, so you know, I'm just not much about – about hearing other attorneys opine about the capabilities of another lawyer in trial.

> And the voir dire from me is gonna be . . . excruciating if they do. So – so they better be really, really well qualified. So the last time your office tried to do it was somebody with marginal qualifications from Marquette didn't go over so good.

This last statement appeared to be a reference to Frinkle's attempt to offer Numinen, the then-president of CDAM, as an expert. This hearing occurred while Frinkle's application for leave was pending.

After this court denied leave to appeal, our Supreme Court reversed the denial and remanded to this Court for consideration as on leave granted. This appeal followed.

---

"judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). See also *People v Snow*, 368 Mich 586, 591; 194 NW2d 314 (1972) (taking judicial notice of trial court records in other cases based on the "one court of justice" concept in Michigan's Constitution, Const 1963, art 6 § 1).

## II.  EXPERT-WITNESS TESTIMONY

Frinkle asserts that the trial court abused its discretion when it refused to allow the proposed criminal defense attorney expert to testify at the evidentiary hearing.  We disagree.  The trial court's statement that allowing a criminal defense expert to testify would set "a dangerous precedent," is contrary to our rules and precedent allowing such testimony.  See MRE 702.  See also *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (involving testimony from a criminal defense expert on the standard for defense in criminal sexual conduct cases).  Its focus on the proposed expert being from the Upper Peninsula may suggest that the trial court decided to exclude the expert out of a sense of localism rather than the witness's credentials or qualifications.  And its statement, "Not in my courtroom," may tend to suggest an inability or unwillingness to apply MRE 702 to this case.  But the trial court ultimately made findings that such testimony would not be helpful to him as a fact-finder for the *Ginther* hearing.  These findings were just enough to satisfy MRE 702, and the other statements were insufficient to unravel or undermine those findings.

We review for an abuse of discretion the trial court's decision to exclude this sort of expert testimony.  *People v Marshall*, 298 Mich App 607, 619; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013).  "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).  We review de novo a trial court's interpretation of statutes and court rules.  *People v Lee*, 489 Mich 289, 295; 803 NW2d 165 (2011).

MRE 702 provides the standards for admitting expert testimony.  A trial court may admit expert testimony under the following criteria:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.  [MRE 702.]

In other words, expert testimony is admissible under MRE 702 if the trial court determines that specialized knowledge will assist the fact-finder.  See *Marshall*, 298 Mich App at 619, quoting MRE 702.

At Frinkle's *Ginther* hearing, a fact in issue was whether her trial counsel was deficient, which is to say, whether his performance fell below the objective standard of reasonable practice. *People v Trakhtenberg*, 493 Mich at 51.[6]  To that end, and contrary to the trial court's statement

---

[6] Both the United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel.  US Const, Am VI; Const 1963, art 1, § 20.  This state has adopted the

about setting "a bad precedent," this Court and our Supreme Court have recognized that attorney experts may testify regarding the issue of ineffective criminal defense. See *id*. at 53-54. See also *Marshall*, 298 Mich App at 619. While such testimony is allowed, a trial court does not have to admit it if it does not satisfy MRE 702, including the requirement that the testimony "will assist" the fact-finder. See *Marshall*, 298 Mich App at 619.

In *Trakhtenberg*, the admissibility of criminal defense expert testimony was not at issue; it was merely a feature of the case. *Trakhtenberg*, 493 Mich at 53-54. There, the defendant's trial counsel failed to identify the factual predicate underlying five charges of criminal sexual conduct. *Id*. Despite the fact that the charging documents lacked specific factual allegations, trial counsel advised the defendant to waive a preliminary examination, and she failed to move for a bill of particulars. *Id*. At a *Ginther* hearing, an expert in criminal trial practice and defense involving criminal sexual conduct testified that trial counsel had no way to develop a defense without a preliminary examination or a bill or particulars. *Id*. In partial reliance on that expert's testimony, the Court held that "defense counsel's performance was constitutionally deficient because a sound defense strategy cannot follow an incomplete investigation of the case when the decision to forgo further investigation was not supported by reasonable professional judgment." *Id*. at 55.

Unlike *Trakhtenberg*, in *Marshall*, the admissibility of expert testimony was at issue. See *Marshall*, 298 Mich App at 619. This Court held that the trial court did not abuse its discretion when it precluded expert testimony "regarding whether defense counsel's performance adhered to community standards and norms" at a *Ginther* hearing. *Id.* We explained that expert testimony is admissible under MRE 702 if the trial court determines that "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." *Id*. (quotation marks omitted). In that case, the trial court acted as the trier of fact and determined that the proposed testimony would not be helpful because the trial court was well aware of the community standards applicable in an ineffective-assistance-of-counsel claim. *Id*. This Court explained:

> The trial court appropriately evaluated the admissibility of the proposed testimony under MRE 702. Because the court was familiar with the facts of the case and the legal standards for evaluating an attorney's performance relative to a claim of ineffective assistance of counsel, its decision to exclude defendant's proposed expert testimony was within the range of reasonable and principled outcomes and, therefore, was not an abuse of discretion. [*Id*.]

Although the question of defense attorney expert testimony was not before the court in *Trakhtenberg*, and although *Trakhtenberg* and *Marshall* had different outcomes, both cases illustrate the same principle for that admissibility of expert testimony: The decision to admit such

---

federal constitutional standard for an ineffective-assistance-of-counsel claim as set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Pickens*, 446 Mich 298, 314; 521 NW2d 797 (1994). In order to obtain a new trial, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

expert testimony is determined under MRE 702. See *Marshall*, 298 Mich App at 619. See also *Trakhtenberg*, 493 Mich at 53-55.

Contrary to Frinkle's contention that *Marshall* is somehow distinct from this case—because, there, the defendant and trial counsel presented conflicting accounts of their pretrial discussions and defense strategies—both this case and *Marshall* present the same question under MRE 702. The question is whether the expert witness helps the trier of fact (in this case, the trial judge) evaluate the objective standard for an effective criminal defense, and whether trial counsel's performance fell below it. The fact that the trier of fact in *Marshall* also had to determine the credibility of the defendant and trial counsel was not related to the purported expert testimony about prevailing community standards in that case. Further, *Trakhtenberg* and *Marshall* are not inconsistent. The question of attorney expert testimony admissibility under MRE 702 was not before the Supreme Court in *Trakhtenberg*, 493 Mich at 53.[7]

Here, Frinkle argued that trial counsel rendered ineffective assistance of counsel by (1) raising self-defense in front of the jury before abandoning it in front of the jury and (2) failing to object to an incorrect jury instruction. At the *Ginther* hearing, she offered an expert in defense strategy to testify that trial counsel's actions related to self-defense were not objectively reasonable under prevailing professional norms. The trial court determined that the testimony was not admissible under MRE 702 because the trial court, as the trier of fact, did not need an expert to help it understand the issue. The trial court explained that the expert may or may not be an experienced trial attorney; however, almost every *Ginther* hearing involves questioning the trial counsel and looking through the transcripts. The trial court further explained that trials are fluid events and that the expert was not present during the trial.

The trial court's reasoning for rejecting 'Frinkle's expert witness under MRE 702 was not an abuse of discretion. Applying MRE 702, the trial court appears to have relied on its own experience with criminal trials to conclude that an expert on criminal defense would not be helpful. While other judges may have reached a different conclusion, under the abuse-of-discretion standard, the trial court's conclusion was not necessarily wrong.[8] Frinkle contends that the trial

---

[7] Frinkle also asserts that the trial court failed to apply the rigorous *Daubert* analysis, see *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), incorporated into MRE 702 to her requested expert. See *Elher v Misra*, 499 Mich 11, 22; 878 NW2d 790 (2016). The *Daubert* analysis is a test to ensure that the expert witness's testimony is reliable. *Id*. This analysis is only one precondition under MRE 702 before the trial court may admit expert testimony. See *Gilbert v Daimler Chrysler Corp*, 470 Mich 749, 789; 685 NW2d 391 (2004). A precondition in MRE 702 separate from the *Daubert* analysis is the trial court's duty to "determine[] that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." MRE 702. Before determining that the expert witness's testimony was reliable, the trial court in this case determined that the expert's knowledge would not assist the trier of fact to understand the evidence or a fact in issue.

[8] It is worth noting that many trial judges confronted with the same underlying facts would find expert testimony unhelpful because trial counsel's performance may appear to be obviously deficient and untethered from sound trial strategy.

court did not automatically have the required knowledge to understand the issues at hand in this ineffective-assistance-of-counsel claim. She points to the fact that this particular judge spent all but two years of his 35-year career as either a prosecutor or a judge. Issues of ineffective assistance, particularly trial defense strategy, are commonly raised in the trial court and appellate courts following conviction. As Frinkle acknowledges, this judge has spent most of his 35-year career as a prosecutor or a judge. This means this judge has spent years observing defense strategy across the aisle or as a sitting judge. This fact does not support defendant's argument that the trial court would not understand the prevailing norms for an ineffective-assistance-of-counsel claim.

Relatedly, Frinkle also argues that representing an indigent person in a capital murder case is not within the realm of common knowledge. However, Frinkle has not addressed how presenting and then abandoning a self-defense argument differs when a defendant is indigent. Ultimately, the trial court was familiar with the facts of the case, presided over the entire trial, and heard trial counsel testify about his performance at the *Ginther* hearing. The trial court also presided over various *Ginther* hearings and considered various claims of ineffective assistance of counsel over time. For these reasons, the trial court did not abuse its discretion when it excluded the expert witness's testimony on the ground that the testimony would not assist the trier of fact. See *Marshall*, 298 Mich App at 619.

Frinkle also challenges the trial court's negative commentary on the expert residing in the Upper Peninsula. She asserts that the trial court changed the scope of an ineffective-assistance-of-counsel claim by asserting that an attorney from the Upper Peninsula (in this case, the president of CDAM) would not be able to comment on the standard of practice in the Jackson community. The trial court appeared to belittle the proposed expert witness because his practice was located in the Upper Peninsula. Acknowledging that community standards may vary and may affect analysis under MRE 702, it is difficult to discern how the proposed expert's locality, as opposed to the trial judge's experience, would validly impact an MRE 702 analysis. Instead, the trial court's comments regarding the proposed expert being from the Upper Peninsula were unnecessary, and even in potential conflict with analysis under MRE 702 of whether the expert's testimony would assist the fact-finder. We nonetheless conclude that the trial court's unnecessary commentary was not substantial enough to undermine the otherwise valid decision to exclude evidence premised on the trial court's own knowledge of ineffective assistance claims involving self-defense.

### III. JUDICIAL DISQUALIFICATION

Frinkle also argues that this Court should disqualify the trial judge from presiding over further proceedings. In support, she asserts that the trial court showed bias in favor of trial counsel at the *Ginther* hearing when it explained that trial counsel was the judge's previous law clerk, it knew trial counsel very well, and it believed that trial counsel was "a lawyer that regularly practices and with a great deal of skill and proficiency." Frinkle also contends that the trial court expressed open disdain for the proposed expert witness whom defendant attempted to call at the *Ginther* hearing. For these reasons, defendant contends that the trial court should be disqualified from this case. We conclude that the combination of statements from the trial judge about trial counsel, Frinkle's proposed expert, ineffective-assistance-of-counsel claims, and *Ginther* hearings was sufficient to create an unacceptable appearance of impropriety.

To preserve a claim of judicial bias or impartiality, a litigant must object to the alleged biased conduct at trial. *People v Stevens*, 498 Mich 162, 180 & n 6; 869 NW2d 233 (2015). In part due to the posture of this appeal, Frinkle did not raise a claim of judicial bias in the trial court.[9] So this issue is not preserved. *Id.*; See *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011) (addressing a claim of judicial bias raised for the first time in a direct appeal).

Generally, the issue of whether judicial impartiality deprived a defendant of due process is a question of constitutional law that this Court reviews de novo. See *Stevens*, 498 Mich at 168. But because Frinkle did not preserve this issue, our review is limited to plain error affecting substantial rights. *Jackson*, 292 Mich App at 597. See also *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). As stated in *People v Brown*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 359376); slip op at 3 (N. P. HOOD, J., concurring):

> To obtain relief under the plain-error rule, a defendant must prove that (1) an error occurred, (2) the error was plain, and (3) that the plain error affected substantial rights—in other words, the error affected the outcome of the proceedings. *People v Anderson*, 341 Mich App 272, 280; 989 NW2d 832 (2022). If a defendant satisfies these three requirements, we must determine whether the plain error warrants reversal, in other words, whether it seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *Carines*, 460 Mich at 763-764. Sometimes identified as a fourth prong of plain-error analysis, this last step conceptually overlaps with the third prong. [*People v Davis*, 509 Mich 52, 75-76; 983 NW2d 325 (2022).].

This standard also applies to the rare category of constitutional errors identified as "structural errors." *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015). Structural errors are "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Arizona v Fulminante*, 499 US 279, 309; 111 S Ct 1246; 113 L Ed 2d 302 (1991) (holding that the use of coerced confession at trial was a structural error; recognizing deprivation of the right to an impartial judge as a structural error and explaining that "[t]he entire conduct of the trial from beginning to end is so obviously affected . . . by the presence on the bench of a judge who is not impartial"); *Tumey v Ohio*, 273 US 510, 535; 47 S Ct 437; 71 L Ed 749 (1927) (holding that where a biased judge presides over a trial, reversal is mandated even where the evidence of guilt is overwhelming and the sentence imposed is within legal limits). See also *Stevens*, 498 Mich at 178-180. Our Supreme Court recently explained that forfeited structural errors are also "particularly ill-suited to an analysis of whether the error affected the outcome of the trial court proceedings." *Davis*, 509 Mich at 72. Therefore, "the existence of a forfeited structural error alone satisfies the third prong of the plain-error standard, and a defendant need not also show the occurrence of outcome-determinative prejudice." *Id.* at 74. In other words, a forfeited structural error automatically satisfies the third prong and creates a formal rebuttable presumption that a

---

[9] The full extent of the trial judge's potential bias did not become apparent until after Frinkle filed her interlocutory application for leave to appeal. The trial judge made statements about Frinkle's case and about ineffective-assistance-of-counsel claims generally, exposing a potential bias. These statements occurred while Frinkle's appeal was pending.

defendant has satisfied the fourth prong. *Id*. at 73-75. When a reviewing court determines that a judge has pierced the veil of judicial impartiality, a structural error has been established that requires reversal. *Stevens*, 498 Mich at 178.

We conclude that such an error has occurred here. "Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012); see also *Bracy v Gramley*, 520 US 899, 904-905; 117 S Ct 1793; 138 L Ed 2d 97 (1997) ("[T]he floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case.") (citation omitted). "A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Mitchell*, 296 Mich App at 523. But the presumption is overcome where "the trial court display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Cain v Michigan Dep't of Corrections*, 451 Mich 470, 496; 548 NW2d 210 (1996) (citation omitted).

"[M]ost matters relating to judicial disqualification [do] not rise to a constitutional level." *FTC v Cement Institute*, 333 US 683, 702; 68 S Ct 683; 92 L Ed 1010 (1948).

In relevant part, the Michigan Court Rules enshrine grounds to disqualify a judge:

> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [MCR 2.003(C)(1).]

MCR 2.003(C)(1)(b) incorporates Canon 2 of the Michigan Code of Judicial Conduct which obligates a judge to avoid all impropriety and the appearance of impropriety. On appeal, Frinkle specifically invokes Canon 2(A) and 2(B) which provide:

> Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.
>
> A judge should respect and observe the law. At all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary. Without regard to a person's race, gender, or other

protected personal characteristic, a judge should treat every person fairly, with courtesy and respect. [Code of Judicial Conduct, Canon 2(A), (B).][10]

Whether the trial court has exhibited the appearance of impropriety is an objective inquiry, asking "whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Okrie v Michigan*, 306 Mich App 445, 473; 857 NW2d 254 (2014) (quotation marks omitted), quoting *Caperton*, 556 US at 888. Whether a judge's conduct violates the constitutional guarantees of fairness and impartiality requires us to consider the totality of the circumstances. See *Stevens*, 498 Mich at 171. It is a fact-specific inquiry. *Id.*

At the threshold, Frinkle properly concedes that trial counsel's past employment as the trial court's law clerk was not a basis for disqualification. See MCR 2.003(C)(2)(A) (providing disqualification is not warranted "merely because the judge's former law clerk is an attorney of record for a party in an action that is before the judge . . . ."). Likewise, she does not argue that critical comments, adverse rulings, or opinions the trial judge formed during the course of the proceedings standing alone warrant disqualification.

Instead, her argument relies, as it should, on the totality of the circumstances surrounding Frinkle's hearing. This includes the trial court's comments about trial counsel's experience and skill, the comments about the proposed expert witness's practice in the Upper Peninsula, and comments that suggest a general negative predisposition toward ineffective-assistance-of-counsel claims. Typically, critical comments standing alone are insufficient to demonstrate judicial bias. See *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999) (holding that when "a judge forms opinions during the course of the trial process on the basis of facts introduced or events that occur during the proceedings, such opinions do not constitute bias or partiality unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible," and "[c]omments critical of or hostile to counsel or the parties are ordinarily not supportive of finding bias or partiality."). Likewise, adverse rulings, standing alone, are insufficient to demonstrate bias. See *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009) ("The mere fact that a judge ruled against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require disqualification or reassignment."). But we consider whether the combined effect of these comments and rulings demonstrate a serious risk of bias and impartiality. See *Stevens*, 498 Mich at 171.

Considering the totality of the circumstances, the trial court's effusive statements about trial counsel's skill and practice, its disparaging statements about the specific proposed criminal defense expert, disparaging and dismissive statements about ineffective-assistance-of-counsel claims and *Ginther* hearings in general, all combine to create a serious risk of actual bias implicating Frinkle's due-process rights.

First, we have the statements about trial counsel. The trial court began the *Ginther* hearing by advising the parties that trial counsel was a former law clerk of the court and that trial counsel

---

[10] Frinkle also invokes Canon 2(C) which relates to personal relationships affecting court proceedings.

"regularly practices with a great deal of skill and proficiency in my courtroom." Although such a disclosure would typically be accompanied by a statement that the trial court is nonetheless able to fairly and impartially decided the issue before it, the trial judge made no such clarifying statement. Later in the proceeding, the trial court interrupted direct examination of trial counsel to interject that attorneys frequently employ a strategy of admitting guilt on a lesser offense to bolster a defendant's credibility in hopes that the jury will convict the defendant of the lesser offense. This question, or statement, may have been relevant to Frinkle's ineffective-assistance-of-counsel claim for trial counsel's self-defense strategy at issue at the *Ginther* hearing, but it strayed from the sort of even-handed clarifying questions contemplated by MRE 614(b). See *Stevens*, 498 Mich at 173-178 (analyzing whether judicial questions of a defense witness pierced the veil of impartiality). The leading question also plainly favored one side over the other. Again, standing alone, it would be difficult to conclude that the trial judge's statements about trial counsel rose to the level of deep-seated favoritism or antagonism. See *Wells*, 238 Mich App at 391. But these statements were not alone.

We also have the statements about the specific expert at issue. As analyzed in the previous section, the trial court excluded testimony from Numinen, Frinkle's proposed expert on criminal defense. It concluded that the testimony would not assist the trial court as fact-finder under MRE 702. It apparently reached this conclusion without considering the witness's specific credentials or qualifications. This is evidenced by the fact that during another hearing, the trial court described Numinen as "somebody with marginal qualifications from Marquette." In reality, Numinen, at the time, was president of CDAM and a fellow of the American College of Trial Lawyers. The record strongly suggests that the trial court never actually considered Numinen's credentials. The record also suggests a strong geographic preference against lawyers from the Upper Peninsula opining on the standard of representation that may have exposed the deficient performance of a local attorney. Unprofessional comments about a proposed expert, standing alone, might not be enough to expose a risk of bias, but the trial judge's comments seem to indicate that he completely ignored the witness's credentials and focused primarily on what part of the state he came from. This is another node indicating the trial court's actual bias. But it is not the last.

Finally, and most concerning, we have the trial court's more general statements about ineffective-assistance-of-counsel claims and *Ginther* hearings, including those that the trial court made during another case in which it referenced Frinkle's case. During a status conference for another postconviction matter, the trial court expressed annoyance, if not disdain, for ineffective-assistance-of-counsel claims, *Ginther* hearings, and the frequency that they appear before the court. During the hearing, the trial judge observed, "I don't know why but all of a sudden I'm hearing a lot of Ginther hearings. Even against really good defense attorneys . . . is it like the new de-jour [sic] appeal." This statement alone appear to indicate a dismissiveness toward precisely the sort of claims Frinkle has pending before the court. The fact that the trial judge also referenced her case is extremely troubling. Not only did the trial court take the opportunity to disparage Frinkle's expert by describing him as marginally qualified. It also indicated its predisposition toward allowing criminal defense expert testimony, by warning counsel in that case that "the voir dire from me is gonna be . . . excruciating." This echoed earlier comments from the trial judge during Frinkle's hearing to the effect of "not in my courtroom." When viewed in totality, these comments all point in the same direction. They indicate disdain and predisposition against the sort of claim Frinkle was bringing and the sort of evidence she was offering in support of that claim.

The facts in the record combine to indicate a serious risk of actual bias warranting disqualification. See MCR 2.003(C)(1)(b); *Caperton*, 556 US at 884. The failure to disqualify resulted in a structural error. See *Stevens*, 498 Mich at 178-180; *Fulminante*, 499 US at 309-310. This structural error satisfies the first three prongs of plain-error analysis and creates a rebuttable presumption that reversal is warranted under the fourth prong. See *Davis*, 509 Mich at 73-75. We conclude that the trial judge's serious risk of impartiality and bias in favor of trial counsel, against criminal defense experts, and against ineffective-assistance-of-counsel claims warrants reversal because it "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Carines*, 460 Mich at 763-764 (cleaned up). We, therefore, remand for continued proceedings before a different judge.

## IV. CONCLUSION

For the reasons stated above, we affirm the trial court's decision to exclude an expert. Based on the facts that existed at the time of the hearing and the findings on the record, the trial court did not abuse its discretion when it decided that a criminal defense expert would not assist it as a fact-finder under MRE 702. Nonetheless, we conclude that the trial court's statements at the *Ginther* hearing and other statements about Frinkle's case and ineffective-assistance-of-counsel claims illustrate a serious risk of actual bias that prohibit the trial court from proceeding on this case. We, therefore, remand for continued proceedings before a different judge.

On remand, the Chief Judge of the Jackson Circuit Court shall reassign this case. The *Ginther* hearing and motion for a new trial shall continue before a different judge. Our findings regarding the trial judge's findings under MRE 702 in no way restrict the newly-assigned judge from considering whether criminal defense expert testimony will assist the court under MRE 702. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado